THE PEOPLE ex rel. IRA O. WILLIAMS et al., Appellants, v. JESSE P. HAINES et al., Respondents.

The occupancy and use of lands for the purpose of constructing and maintaining ditches, as authorized by the provisions of the act appointing commissioners for draining certain lands in the town of Royalton, Niagara county (chap. 774, Laws of 1867), is such an interference with the proprietary interests of the owner as entitles him to the just compensation made necessary by the Constitution. (Con. of State, art. 1, § 6.) It subjects the lands to an easement in behalf of the public, depriving the proprietor of the full and free enjoyment of them.

Nothing less than a legal title in perpetuity will serve the purposes of the act or the object contemplated. The title to the easement can only be acquired by a grant in proper form. It was the duty of the commissioners, before entering upon the lands and constructing the ditches, to procure a grant from the owner, either by voluntary donation or for an agreed compensation, or upon an appraisal of damages as prescribed by law.

It is only for an improvement lawfully made, and for work done and expenses incurred, as authorized by law, that an assessment can lawfully be levied and the property of the citizen taxed.

But one assessment under the act aforesaid is authorized, and that is for the completed work, including the land damages, and the commissioners cannot make it until their duties under the act have been performed. The power once exercised is exhausted, and no subsequent steps can be taken to acquire title to the easement.

Where, therefore, without the procurement of a grant of the easement in any of the prescribed modes the commissioners entered upon lands, constructed ditches, estimated and assessed the costs of constructing, and apportioned the same among the owners of the lands benefited,—*Held*, that the assessment and all subsequent proceedings were void.

Whether the commissioners can proceed to acquire title and make a new assessment, *quere*. (*The People* v. *Nearing*, 27 N. Y., 306, questioned.)

(Argued June 3, 1872 ; decided June 11, 1872.)

APPEAL from an order of the General Term of the Supreme Court in the eighth judicial district, affirming the proceedings of the commissioners in draining certain lands in the town of Royalton, in Niagara county.

The judgment of the Supreme Court appealed from was rendered upon the joint return of the respondents to two writs of certiorari, the one directed to Jesse P. Haines and

two others, commissioners, etc., and the other to the board of supervisors.

By an act of the legislature, passed in April, 1867, Haines and his two associates were appointed commissioners for draining certain low lands in Royalton, Niagara county. (Sess. Laws of 1867, chap. 774.)

The proceedings brought up for review were taken and conducted under said act by the three commissioners therein named. They were directed by the act to cut one main ditch, from the point specified in the first section of the act, running southerly to such point on Black, or Mud, creek as the commissioners, in their judgment, should deem best to effectually drain the lands referred to. They were authorized to cut as many lateral ditches as might be necessary for the effectual drainage of the low lands mentioned.

By the sixth section of the act the commissioners are required to estimate and assess the cost of constructing the ditches they determine to make, including land damages therefor, if any, with their fees and all expenses incident thereto, and to apportion the same among the several owners or occupants of the land deemed to be directly benefited.

The same section provides that if any person upon whose lands the main or any lateral drain shall be laid out or contemplated shall refuse to allow the commissioners to enter on their lands and make the drains, or either of them, and the commissioners cannot agree with such owner upon the compensation and damages to be paid for making and maintaining forever the drains upon their lands, then the commissioners are directed to take proceedings to acquire the title to the easement upon or across the lands of the person so refusing, in the manner provided for by the general railroad act of this State.

By the seventh section of the act it is provided that the estimate of the benefits and of the damages shall be made out, signed and filed by the commissioners, and the same is to become a lien on the lands designated by them.

The eighth section of the act provides that the board of

1872.] People ex rel. Williams et al. *v*. Haines et al. 589

Statement of case.

supervisors shall cause the expense of draining the lands, as determined by the commissioners, to be assessed to or upon the owners of the lands described by the commissioners, and the same is to be levied and ·collected and paid over to the county treasurer of the county, in the same manner as county taxes are levied, collected and paid over.

The commissioners, under the act, made the ditches and assessed the expenses, and filed their roll. They entered upon and took the land required for the ditches, without applying to the owners for permission so to do, or attempting to agree with them as to the compensation to be paid for the land, except in one case. The commissioners return that they did not apply to any other persons to acquire the right to use their lands for the ditches, and acted upon the assumption they had a right to use the lands unless the owners volunteered a refusal to allow them to enter on their lands and make the drains.

The commissioners made the ditches through the lands of the relators without acquiring any right to do so.

*John Ganson* for the appellants. The taking of the land required entitled the owner, under the Constitution, to compensation. (Chap. 774 of Laws of 1867, § 6 ; *The People* v. *Nearing*, 27 N. Y. R., 306 ; *Williams* v. *The New York Central Railroad Company*, 16 id., 97 ; *Parks* v. *Boston*, 15 Pick., 198, 203 ; *Morris Canal and Banking Company* v. *Townsend*, 24 Barb., 658 ; *Ex parte Jennings*, 6 Cow., 518, 525, 526 ; *Baltimore and Ohio R. R. Co.* v. *Thompson*, 10 Maryland, 76.; *Ellis* v. *Welch*, 6 Mass., 251 ; *Brown* v. *Powell*, 25 Penn., 229 ; *Enfield Toll Bridge Company* v. *Hartford, etc., Railroad Co.*, 17 Conn., 454.)

*Levi F. Bowen* for the respondents. The act of 1867 was constitutional. The legislature adjudged the taking was for public use, and this is conclusive. (*Varrick* v. *Smith*, 5 Paige, 137; *People* v. *Smith*, 21 N. Y., 595 ; *Spring* v. *Russel*, 7 Greenleaf, 292; *Concord R. R. Co.* v. *Greeley*, 17 New

Hamp., 47; *Beekman* v. *Saratoga, etc., R. R. Co.*, 3 Paige, 47; *People ex rel. Cook* v. *Nearing*, 27 N. Y. R., 306.)

ALLEN, J.    Conceding that the purchase and use for which the lands of the relators were authorized to be taken and occupied by chapter 774 of the Laws of 1867 was a public use, and such as authorized the exercise of the sovereign right of eminent domain, the lands could only be taken or appropriated *in invitum* upon just compensation to the owner. (Const., art. 1, § 6.)    Although the occupancy and use of the lands for the purpose of constructing and maintaining a ditch for the draining of the low lands upon its borders did not deprive the owner of the fee and gave the public but an easement, it was such an interference with the proprietary interests of the owner as entitled him to the just compensation made necessary by the Constitution as a condition precedent to the taking of private property for public use.    It was the imposition of a burden upon the lands, subjecting them to an easement in behalf of the public derogatory to the rights of the proprietor, and depriving him of the full and free enjoyment of them. (*Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y., 97; *People* v. *Nearing*, 27 id., 306; *Parks* v. *Boston*, 15 Pick., 198; *Brown* v. *Powell*, 25 Penn. St. R., 229; *Enfield Toll Bridge Co.* v. *Hartford R. R. Co.*, 17 Conn., 454.)    The principle was recognized in the act authorizing the commissioners named in the act under review to perform the duties assigned them. The act, section 1 (S. L., p. 1900), gave the commissioners power "to enter upon and take possession of the lands necessary for the construction of the ditch, and to appropriate and use the same for the purpose of constructing the same." Had they exercised the power without the consent of the owners of the lands, or making them just compensation, and in the absence of any provision for such compensation, they would have been trespassers.    Provision was made for this in a subsequent section of the act.    By section 6 they were authorized to acquire the title to the easement, and nothing less than a legal title in perpetuity would have served the purposes of the act or the object contem-

plated. The ditches were to be made and maintained, and compensation and damages were to be paid "for making and maintaining forever" the said drains, and in section 12 provision is made for the maintenance of the ditches or drains and keeping them in repair perpetually, under the care and direction of the commissioners of highways of the town, and the levying of the expenses annually by the board of supervisors upon the lands originally assessed for their construction. The commissioners for the construction were empowered to acquire the easement for the public in either of three ways: by voluntary grant or donation, by agreement with the owner for compensation, or upon failure to agree with the owner by appraisal of the damages in the same manner as is prescribed by the general railroad act for the taking of lands for railroad purposes, and as authorized by section 7 of article 1 of the Constitution. The legislature did not contemplate or authorize the construction of the drains and the charging of the expense upon the lands intended to be benefited, except upon lands where they might lawfully be made and maintained. There was no power in the commissioners to construct the ditches and assess the cost upon property benefited without having first acquired the right to do so. It would be gross injustice to those charged with the expense of the improvement to compel them to pay for drains which might be filled up the next hour by the owner of the lands, and which could not be forever thereafter kept and maintained as prescribed by the act, and it would do violence to the language of the act as well as the good faith of the legislature to give the act an interpretation which would permit such injustice. The act requires the commissioners to proceed to acquire the title to the easement in virtue of the sovereign power, and upon an assessment of the damages under the Constitution. in case the owners of the lands upon which the drains or either of them should be laid out or contemplated "shall refuse to allow them to enter on their lands and make the said drains or either of them," and the commissioners cannot agree upon the compensation and damages to be paid. The refusal

to allow the commissioners to enter upon the lands and make the drains is put in the place and stands for a refusal to grant the easement, and is the equivalent of a failure to agree upon a just compensation, and both classes are spoken of in the clause authorizing the taking of lands *in invitum*, as the " person so refusing." The act contemplates and requires, not a tacit acquiescence, a license implied by mere silence, but an affirmative act by the owner of the land, conferring an express authority and creating a title to the easement. The title to the easement could only be acquired; the making of the ditches and their maintenance could only be legally " allowed " by the owner, by a grant in proper form. All easements lie in grant. It was the duty of the commissioners, before entering upon the lands and constructing the ditches, to acquire the title, to procure a grant from the owner, either by voluntary donation or for an agreed compensation, or upon an appraisal of the damages as prescribed by law. There is no title to the lands upon which the drains are constructed except as to a single parcel, and the ditches are on the private property of individuals who may exclude the public from entering to keep them in repair or for any purpose. The assessment under review is made under the sixth section of the act which directs the commissioners to estimate and assess the costs of constructing such ditches, including land damages, etc., and apportion the same among the owners of lands benefited, and by section seven the estimate is to be filed, and upon being filed it becomes a lien upon the lands assessed and is by section 8 to be assessed or taxed upon the owners of the lands and collected as other taxes are collected. But one assessment is authorized and that must be for the completed work, including the land damages, and the commissioners cannot make it until their duties under the act have been performed. The provisions of the act must be strictly followed.

It was suggested that they might hereafter proceed to acquire the title to the easement, and make a second assessment for that. It is a sufficient answer to say, that the power

to make an assessment is not a continuing power, but simply an authority to perform a single act, and once exercised it is exhausted. It becomes *functus officio*. (*Sherman* v. *Boyce*, 15 J. R., 443, per PLATT, J.) Having completed the work and made the assessment, they ceased to be commissioners for any purpose, even to review their own work and correct their own errors. Conceding this assessment to be valid and the authority well exercised, the power was exhausted and its exercise could not be repeated and no proceedings could be taken under the act to secure a title to the easement. Whether the commissioners could, the present assessment being vacated, proceed to acquire the title and then make a new assessment may be questionable, but need not now be considered. (*Strachey* v. *Turley*, 11 East., 194, per Lord ELLENBOROUGH, C. J.) Another and a sufficient answer to the suggestion, so far as it is invoked to uphold this assessment and the action of the commissioners in making it and the supervisors in enforcing its collection is, that the law does not authorize the making of an assessment for the costs and expenses incurred in the doing of a work. and the construction of ditches in which the actors were trespassers. It is only for an improvement lawfully made that an assessment can be lawfully levied. It is only for work done and expenses incurred as authorized by law, that the property of the citizen can be taxed. *The People* v. *Nearing* (*supra*) is cited as authority for the proposition that an assessment can be made upon property for the benefits resulting from a trespass upon individual property. If the case goes this length it cannot be sustained upon any principle. It is very well settled, and so well established that no departure from the rule would be tolerated, that to authorize the taking or the appropriation of the property of the citizen, or the imposition of any burden upon him or his property by officers of a special or limited jurisdiction, the statute authorizing it, the power conferred must be strictly pursued. If the officer so far departs from the statutory power and the directions for its exercise as to become a trespasser, he necessarily loses the protection of the statute, and

cannot charge the burthen of his acts upon the citizen.    In such case there would be no substantial compliance with the act granting the power to tax property, which in all cases is a condition precedent to the right of taxation by public officers. It would seem that four of the eight judges of the court were of the opinion that the act under which the commissioners acted in entering upon property making ditches and assessing the cost upon the property benefited was unconstitutional, and yet the proceedings of the commissioners were affirmed. I can discern no sufficient reason for this judgment, except as it may be found in the enabling act of 1860 (chap. 258) which authorizes a new assessment to be made for the work done under the original act of 1858, and that the assessment was regarded as the proper exercise of the taxing power by the legislature.

There has been no such enabling act passed in respect to this assessment, and it is not therefore necessary to consider how far or to what extent the case cited would be followed as an authority in a case in all respects like it in circumstances. This assessment cannot be sustained upon any principle or upon the authority of any well considered case.

The judgment of the Supreme Court and the assessment of the commissioners and all proceedings under it must be reversed.

All concur.

Ordered accordingly.