*IN THE MATTER OF THE PETITION OF JAMES VAN BUREN, RESPONDENT, TO VACATE AN ASSESSMENT, ETC.

*Chapter* 566 *of* 1871 — *when the filling in of lots is not authorized by* — *what a substantial error, within chapter* 312 *of* 1874.

Under chapter 566 of 1871 authorizing the draining of lands in the city of New York, when necessary for the public health, the board of health directed the commissioner of public works to drain the lands in a certain district. The department of public works accordingly entered into a contract for building 3,328 feet of drain, and for furnishing and laying 231,000 cubic yards of

---

* As to building drains on private land under the act of 1871, without making compensation to the owner, see *Matter of Cheesbrough*, post page, 561.

filling. In prosecuting the work a number of lots belonging to private indi-
viduals were filled by direction of the department of public works, though such
filling was not necessary to the construction of the drain; 431,619 cubic yards
of filling were charged for and included in the assessment.

*Held*, that such filling of lots was not authorized by the act, and that the increase
of the assessment caused thereby constituted a substantial error within the
meaning of section 1 of chapter 312 of 1874, and required the assessment to be
vacated.

APPEAL from an order made at Special Term, vacating an assessment upon the property of the petitioner.

The board of health under chapter 566 of 1871 directed the commissioner of public works to drain the lands between Ninety-second and One Hundred and Ninth street and Third avenue and the East river. The department of public works thereupon advertised for proposals and entered into a contract for building 3,328 feet of drain, and for furnishing and laying 231,000 cubic yards of earth filling.

While the work was in progress, and without further advertisement or contract, the department of public works directed the contractor to furnish and lay two hundred thousand additional cubic yards of earth filling, and to furnish 139,776 feet of foundation plank. Part of the additional earth filling was rendered necessary by reason of the offensive odor, caused by the bad materials used in the first part of the earth filling. It was not necessary for drainage.

The cost of the work, which was assessed upon the property owners, is as follows:

| | |
|---|---:|
| Drain - - - - - - - - | $5,491 20 |
| 431,000 cubic yards earth filling, $280,552 35 | |
| 139,777 feet of foundation plank, 4,193 28 | 284,745 63 |
| Total - - - - - - - | $290,236 83 |

The following opinion was delivered at Special Term:

LAWRENCE, J.:

I am of the opinion that the assessment in this case should be vacated and set aside..

First. It may well be doubted under the decision of the Court

of Appeals in the case of *People ex rel. Williams* v. *Haines* (49 N. Y., p. 587), and *In the Matter of Rhinelander* (MSS. opinion), whether, as the drains contemplated to be constructed under the act of 1871, chapter 566, are to be run through private property, and the public is thereby to acquire an easement in said land, the owners thereof are not entitled under article 1, section 6 of the Constitution, to compensation for such an interference with their proprietary interests. In the view which I take of this case, it is not, however, necessary to pass upon this point.

Second. The assessment should be vacated because, in point of fact, it is not levied for work which can be said to have been performed under the act of 1871. That act contemplates an assessment for expenses incurred in constructing drains. In this case it will be seen that the great bulk of the assessment is for work done in filling up the lots, embraced in the area bounded by Ninety-second and One Hundred and Sixth streets and the First and Third avenues.

Between One Hundredth and One Hundred and Fourth streets and the First and Second avenues, there are no drains, but there is a vast amount of filling. Between Ninety-sixth and One Hundredth streets and the First and Second avenues, no work appears to have been performed, either in constructing drains or in filling. The same may be said of the area lying between the Second and Third avenues and One Hundred and Second and One Hundred and Sixth streets.

Between One Hundred and Second and Ninety-fourth streets and the Second and Third avenues drains were constructed, but the filling constitutes the principal portion of the work. Between Ninety-second and Ninety-third streets and Second and Third avenues, no work has been executed. Between Ninety-second and Ninety-fifth streets and the First and Second avenues the work includes both drains and filling.

The assessment is laid for the entire work, and it is only necessary to look at the statement of the work charged for, to see that the draining of the lots was not the main work, and that it constituted an insignificant and almost an infinitesimal portion of the expense which it is now proposed to impose upon the property-owners. It appears, from the assessment list, that there were

3,328 lineal feet of drains, at $11.65, making a total of $5,491.20, while there were 431,619 cubic yards of earth-filling, at sixty-five cents per yard, making a total of $280,552.35, which is almost fifty-one times the amount expended for the construction of the drains. If this is not a "substantial error," it is difficult to see what can be comprehended under those words.

Third. I do not mean to be understood as denying that the corporation has the power to direct the filling up of sunken lots, where the municipal authorities have proceeded in the manner pointed out by the laws relating to that subject.

But the filling of sunken lots is not the construction of drains, under the act of 1871, and the corporation cannot, under the garb of exercising the authority conferred by that act, exercise another and a totally different power, conferred by other and different legislative acts, and involving another and different procedure.

Fourth. There are many errors relied upon by the counsel for the petitioner in this case as vitiating the assessment, but it is unnecessary to notice them, inasmuch as the error already alluded to is so glaring, and, in the language of the act of 1871, "substantial," that no further argument appears to be needed to show that justice demands that the assessment should be set aside.

Let an order be entered vacating the assessment.

*J. A. Beall*, for the petitioner, appellant.

*Charles E. Miller*, for the Mayor. etc., of New York, respondent.

INGALLS, J. :

The application for relief against this assessment was made by a petition to the Special Term, and entertained and decided under chapter 312 of the Laws of 1874. This statute amends a former statute, passed April 17, 1858 (chap. 338), entitled, "an act in relation to frauds in assessments for local improvements in the city of New York." The statute referred to provides as follows :

"Section 1. If in the proceedings relative to any assessment or assessments for local improvements in the city of New York, or in the proceedings to collect the same, *any fraud or substantial error* shall be alleged to have been committed, the party aggrieved

thereby may apply to a judge of the Supreme Court, in Special Term or in vacation, who shall thereupon, upon due notice to the counsel of the corporation of the city in which the lands so assessed are situated, proceed forthwith to hear the proofs and allegations of the parties."

This statute authorizes the court to vacate the assessment in case fraud, or *substantial error*, has been committed. In this matter the court vacated the assessment, upon the ground that substantial error had been committed in making the assessment, as appears by the opinion delivered at Special Term. We are satisfied that the decision was correct, and should be sustained. The assessment was made under chapter 566 of the Laws of 1871, which provides as follows :

" Section 1. Whenever it shall appear to be necessary, for the protection of the public health, that any part or parcel of land within the corporate limits of the city and county of New York, needs to be drained by other means than by sewers, and it shall be so certified by the city sanitary inspector, and such certificate is filed among the records of the board of health of the health department of said city, the said board shall direct the same to be done by and under the direction of the department of public works of said city and county.

" Section 2. All parts and parcels of land lying below the levels of the sewers adjacent thereto, upon which surface water remains stagnant, or through which water courses have, or at present do run, may be so drained by a properly constructed blind drain which shall be carried along such natural water course until it can be made to enter any sewer at its proper level, or if such sewer cannot be reached, it shall be carried to the adjacent river.

" Section 3. All lands benefited by said drain, directly or indirectly, for a distance from said drain, included between the adjacent streets and avenues thereto, shall be liable to assessment thereon *pro rata* in proportion to the direct or indirect benefit derived from the construction of said drain. The assessment to be made and collected as other assessments for the public benefit are provided for. The assessments to become a lien upon the property assessed, as in like cases provided."

The board of health under that act directed the commissioner of public works to drain the lands between Ninety-second and One Hundred and Ninth streets and Third avenue and East river. The department of public works thereupon advertised for proposals, and entered into a contract for building 3,328 feet of drain, and for furnishing and laying 231,000 cubic yards of earth filling.

The work projected was the construction of drains, but the evidence shows clearly that in prosecuting such work there was a material departure from the enterprise originally inaugurated, in several respects, one of the most essential of which was the filling of vacant lots, not necessary to the construction of the drains, and hence not contemplated when the improvement was authorized by the public authorities. The unauthorized work is shown to have greatly increased the expense, and thereby added to the burden of the persons who are assessed therefor. In some of the localities which have been filled, no drains have been constructed, and hence it cannot be reasonably pretended that such filling was necessary to the prosecution of the work originally contemplated. It further appears that material wholly unsuitable was used in filling some portion of the territory, and it became necessary to remove it and supply the place with other material, which greatly increased the cost of the work. We are not to determine whether improving waste and unsightly land within the corporate limits is provident or desirable, at the expense of the owner, but rather whether a public work can be projected under a statute for one purpose, and prosecuted, in part at least, for an entirely different purpose, at an increased expense, and the owner of land can be compelled to pay therefor against his will.

It is suggested that Van Buren consented to this work. We fail to discover the evidence of such consent. He testifies that he did not. Certainly mere silence cannot be construed into such an acquiescence in this wrongful exercise of authority, as to prevent him from resisting the payment of this assessment. It cannot be pretended, with any show of reason, that the public authorities were misled by the conduct of Van Buren, and they cannot be allowed to plead ignorance in regard to the extent of the authority which they possess. To hold Van Buren concluded by mere

silence, under the circumstances of this case, would seem to be rather a novel application of the doctrine of estoppel.

It is insisted further by the appellants, that the assessment could be vacated only on the ground of fraud, under chapter 313 of the Laws of 1874, and reliance is placed upon the case *In the Matter of Mayer* (50 N. Y., 504). That decision was made prior to the enactment of the statute under which this proceeding is instituted, and which adds a ground for vacating an assessment, namely, "*substantial error.*" The two statutes, chapter 312 and chapter 313 of the Laws of 1874, were enacted the same day, pertain to the same subject, and both are unrepealed. They are not inconsistent with each other, and can and should be construed together. The result, therefore, is that such an assessment may be assailed for fraud or substantial error. While these statutes are intended to secure to a party relief against an assessment which is objectionable, upon either of the grounds above specified, they are also intended to cure a class of irregularities and omissions which affect the form of the proceeding in making or collecting assessments, and in this respect the statutes are salutary, as they enable the court to disregard a class of errors which are merely formal or technical, and which do not materially affect the merits of the proceeding. We conclude that the decision of the Special Term was correct in holding that the errors alleged were substantial, and were sustained by the evidence, and therefore furnished ground for vacating the assessment in question. *In the Matter of the Emigrant Industrial Savings Bank* to vacate an assessment, decided by the Court of Appeals, but not reported, it is suggested by the counsel for the appellant that in case the assessment shall be held erroneous in some particulars, it may be preserved as to some of the items by a proper application to correct the same. Without expressing any opinion in regard to the regularity of such a proceeding, we are inclined to acquiesce in the suggestion.

The order of the Special Term should be affirmed, with costs and disbursements, but without prejudice to an application by the appellant at the Special Term to correct the assessment, if it desires to make the same.

BRADY, J.:

I reluctantly concur in the result, in this proceeding, at which Justice INGALLS has arrived, but more on account of the effect of the decision in the *People ex rel. Williams* v. *Haines* (49 N. Y., 587) than from the supposed commission of any substantial error.

If the extra filling was necessary to accomplish the work, as it seems to have been, then it was incidental and would not be a substantial error within the meaning of the statute or the decisions expressing its proper interpretation. The case of the *Emigrant Industrial Savings Bank*, to which Justice INGALLS refers, decided that work done without a contract, and, therefore, without original authority, presented a substantial error. It was not declared that an excess of expenditure from necessity to make a valid contract effective, created one. The questions involved are, I think, important, and the court of last resort will doubtless set the law at rest.

Present — BRADY, P. J., and INGALLS, J.

Order affirmed, with costs and disbursements without prejudice to application by appellant at Special Term to correct assessments.