IN THE MATTER OF THE PETITION OF CYRUS SWAN AND OTHERS, TO DRAIN CERTAIN LOW AND WET LANDS IN NIAGARA COUNTY.

*General drainage acts* — 1869, *chap.* 888; 1881, *chap.* 608 — *land damages need not be paid prior to the levying of the assessment.*

To authorize the commissioners, appointed in proceedings instituted under the general drainage acts (1869, chap. 888, and 1881, chap. 608), to levy and collect the assessment authorized by those acts, it is not necessary that the damages awarded to the owners of land over which the ditch is to be constructed should have been actually paid to them prior to the levying of the assessment.

APPEAL by Earl Pierce from an order of the Niagara County Court, approving of the second assessment made by the commissioners appointed to drain certain lands, on the 24th day of January, 1883.

These proceedings were instituted under the general drainage acts, chapter 888, Laws of 1869, and chapter 608, Laws of 1881.

*John T. & S. Cady Murray*, for the appellant.

*Ellsworth & Potter*, for the respondent.

BARKER, J.:

The appellant resists the tax assessed on his lands to pay a deficiency arising from the cost of the construction of the ditch, and for the payment of damages awarded to landowners over whose lands the ditch is located.

A single objection is interposed by the appellant, and this is a legal one, and it is this, that at the time of the assessment the commissioners had not acquired title to some of the lands over which the ditch is located and constructed. The original proceedings were instituted in the year 1870, and the work completed in 1872, and the ditch has been in use ever since. The lands drained are located in the towns of Cambria and Wilson, Niagara county, and the ditch crosses the several premises of seventy-five separate and distinct owners. The area of lands declared to be benefited and as laid down on the map, made and filed by the commissioners in pursuance of section 6 of the act, is 10,000 acres. The first assessment was made in 1872, and the one now under review was made in 1883, as authorized by the amendment to the general act authorizing a reassessment to meet deficiencies. (Chap. 608, Laws 1881.) Of the whole number of landowners whose premises are intersected by the drain, *twelve* have never made any written conveyance granting to the commissioners the right to construct and maintain the same; nor have they been paid for the damages sustained by the construction of the ditch. After the first assessment, and before this one was made, the commissioners, by appropriate proceedings conducted in conformity with the act, caused the damages of the twelve persons mentioned to be determined and awarded. The appellant is not one of this class of landowners. The premises which he

now owns, and upon which the assessment is now levied, of which he complains, he purchased since the ditch was constructed, his grantor having conveyed the right to construct the drain, and also paid the first assessment as laid on these lands. It is unnecessary to make any further statement of the proceedings taken by and before the commissioners, for the purpose of considering the question now presented.

That it was necessary for the commissioners by release, purchase or by proceedings to condemn the same, to acquire the right to construct the ditch over the lands of the several owners, before they could lawfully construct the same, cannot be doubted, and is admitted by the respondent. In our consideration it was not the intention of the legislature nor has it been made a condition precedent to the right to levy an assessment, that the right of easement should be acquired before an assessment could be lawfully laid and the tax collected to secure the funds necessary to pay the cost of construction and the land damages. It is true that the legislative intent on this subject is not very clearly expressed in any terms of the act, but after a careful consideration of all its provisions, and considering the aim and purpose of the act and the mode and manner in which it is to be accomplished, we are of the opinion that its fair and reasonable interpretation supports the conclusions which we have reached.

If the views which we entertain are mistaken and the contrary was the intention of the legislature, then the appellant is entitled to a reversal of the order for the reason that the commissioners have failed to observe the restrictions placed on their powers. The question is an important one and should be carefully considered, as it involves the rights of property and the proper construction of a general law applicable to all parts of the State, in which the public are interested and under which proceedings are being constantly prosecuted.

The drainage of the swamp lands when made under the provisions of the general act is a State work, and when completed the proprietorship in the structures, easements and title to land acquired, is in the State. The right of property is nowhere else vested. It does not belong to any local municipality, such as the county, towns, cities or villages, within whose territorial limits the drains and structures may be located, nor has any individual, or class of individual

members of the general public, any estate or right therein. . The State has authorized the drainage for the purpose of preserving and promoting the public health, and for no other object, and the commissioners are in a sense State officers, at least they are not officers of any of the subordinate political divisions into which the State is divided. (*In the Matter of Ryers*, 72 N. Y., 5.)

The order and method of procedure are clearly indicated and lined out in the statute. The commissioners having been duly appointed their first duty is to view the lands, and by proper investigation of the subject determine whether it is necessary for the purpose of draining the lands to construct ditches, and also whether it is necessary for the purpose of preserving the public health to drain the premises described in the petition. If the commissioners are of the opinion that the work should be done, then their next· duty is to ascertain and determine the cost of construction, including land damages and other incidental expenses, by making a statement in writing of the several sums necessary for such purposes, which statement must be verified by their oaths and filed in the proper office. Of the aggregate sum thus fixed upon they may ,assess a part on the village, town or county, in which the lands drained are situated, and the balance is to be assessed among the owners of such of the lands as are included in the map, or adjoining thereto as they shall deem benefited thereby, and the sums so assessed are deemed liens on such lands until paid. By the eleventh section, if such statement is not appealed from the commissioners, within thirty days thereafter, must proceed to levy and collect the tax, first giving the notice required by the other paragraphs of the act. If such assessment remains unpaid for the period of thirty days after demand made, then the commissioners are empowered to advertise and sell the lands upon which the unpaid tax is assessed.

It is manifest from these and other provisions of the act that the legislature intended that the commissioners should make a full and just compensation to all landowners whose lands are taken for the construction of the drain or otherwise injured thereby. In the ninth section it is declared in positive terms that the land damages shall be paid to the owner before the commencement of any work thereon, and by the eleventh section it is provided, in case any

person shall have been awarded land damages, the same shall be deducted from any assessment made on his property and the balance only collected. A close examination of the provisions of the act fail to disclose an intention that the commissioners shall procure the necessary title before assessing and collecting the money necessary to meet the cost of constructing the drains.

The provision that an assessment may be off-set against an award of land damages clearly indicate that the distribution and assessment to and among the persons benefited might in the course of due procedure precede payment of the damages awarded, and as payment of such damages must precede the acquisition of the necessary title, it fairly discloses the legislative intent to be as we have determined. As the act requires that the extent and character of the works and the cost of their construction must be determined in the first instance, and as the act contains provisions for ascertaining the compensation which should justly be made to the landowners before their lands are condemned for public use, we are of the opinion that the legislature possessed the power to direct the assessment and collection of a tax necessary to construct the work prior to acquiring the title or right of use from individual owners.

There is no provision in the Constitution restraining the legislature from levying and collecting a tax for the purpose of meeting and defraying the expense of a public improvement for the use of the State, to be made on private property prior to the acquisition of the right to take such property for the public use, provided provision is made for making compensation to the owner prior to the seizure and use of his property. The legislature may, as the appellant contends it did in the drainage act, make it a condition to the laying of a tax, that the necessary title be acquired to the lands on which the improvements are to be made. In many instances taxes are laid and collected for the purpose of creating a fund with which to meet the future expenses of government and to protect and construct contemplated public improvements. I am not aware of any constitutional provision or judicial determination which requires that the title to the private property necessary to be acquired in executing such public work shall be secured before the collection of the tax. The power of the legislature to make special assessments for local improvements is derived from the taxing power and is not

distinguishable in principle from the general right of taxation. In illustration, suppose the legislature should determine to enlarge the Erie canal in a locality, specifying in detail the work to be done, and describing the private property necessary to be used, and at the same time making provision in a constitutional manner for ascertaining the damages of the landowner, and also declaring that the cost of the work, as well as the land damages, shall be assessed on the property in some village or town, would it be unconstitutional or unlawful to require the levy and collection of the estimated expenses, before the State acquired the title to the lands to be used? I have no hesitation in answering the question in the negative. The question before us is, in every aspect, as to legal propositions like the one supposed. (*The People ex rel. Griffin* v. *The Mayor of Brooklyn*, 4 N. Y., 419.)

These views are not in conflict with the legal proposition laid down in many cases, that taxes cannot be legitimately levied and collected for the purpose of carrying on a public improvement which is to be constructed on the lands of another, without awarding to such owner a just compensation for the injury sustained thereby. Such acts would be unlawful and amount to a trespass. (*People ex rel. Williams* v. *Haines*, 49 N. Y., 587; *Olmsted* v. *Dennis*, 77 id., 378; *Matter of Cheeseborough*, 78 id., 232.) None of these cases hold that where the plan and nature of the improvement have been first determined by the proper authorities, and the constitutional method adopted for making compensation to the owners of private property which may be taken, that taxes cannot be lawfully levied for the purpose of securing the necessary funds with which, to do the work and to pay the land damages, prior to doing the work or acquiring title to such private property as may be needed for the purpose contemplated. The legislature may not, as has been frequently adjudicated, levy taxes on private property for unlawful purposes. In *People* v. *Haines* (*supra*), the court in considering a special act (chapter 774, Laws of 1867) for draining certain low lands, held that power was not vested in the commissioners appointed under the act to assess the cost of the work upon property benefited, without having first acquired the right to do so from the owners whose lands were used for that purpose. The commissioners in that case made no effort to acquire such right, and constructed the

ditches on the supposition that the landowners were not entitled to any compensation. For these reasons it was decided that the tax was void.

In *Olmsted* v. *Dennis* (*supra*) the general drainage act was under consideration, but the question now up was not involved in the judgment. The issue there was whether the commissioners who had borrowed some money from the plaintiff to aid in carrying on the work were personally liable to him, because they had neglected to discharge their official duties. One of the charges made against them was that they had not paid for or acquired the title to the lands on which the drain was constructed. In reply to this accusation, EARL, Justice, said: "They could not levy and collect any assessment for the expense of the drain until they had acquired a sufficient title to such lands. The persons to be bene-fited could be assessed only for drains lawfully constructed, and which could be perpetually maintained." (Citing 49 N. Y., 587, *supra*.) This was followed by a remark that as the drains were constructed with the consent of the owners, although the commis-sioners had not acquired the title, they were not trespassers, as they did not refuse to pay for the lands or acquire title thereto. We do not understand that the court intended in this case to say more than to affirm the positions which it had before taken on the subject, and which were stated in the previous case of *The People* v. *Haines*. In the *Matter of Cheeseborough* (*supra*) a sewer had been constructed over the lands of a party, and the same was intended for permanent use in draining adjacent land, and for the purpose of preserving the public health in the locality where it was constructed. The owner had not granted the easement necessary for maintaining the sewer, nor consented to its construction, and the act under which the improvement was made did not make any provision for awarding compensation to the owner. It was held that the officials charged with the construction of the sewer were guilty of a trespass in entering upon the lands of the owner with-out his consent, and that "the officials in the construction of the sewer committed a trespass, for the expense of which no valid assessment could be laid," and the same was set aside for that reason.

The general principles of law laid down in *The People* v. *Haines* and *Olmsted* v. *Dennis* are no broader or different than those

asserted in the last case, and they are all in harmony with the views which we entertain and have sought to express. In the case at bar all the owners who did not consent in writing, sufficient in form to secure the right to construct the drains, have had a full compensation awarded them, determined in a constitutional manner, for the damages they have sustained, and on payment of the same a sufficient title will be secured for the privilege of maintaining the drains. They all consented to the construction of the work, as is inferable from the history of the case set forth in the record, and the prepayment of damages as provided in the act was for their benefit, which they could waive, and therefore the commissioners have not been trespassers in any respect upon the lands of private owners. (*Olmsted* v. *Dennis, supra.*)

There is no pretense that the commissioners have denied the right of any landowner to full compensation for his damages. On the contrary, the history of the case shows that they have acted in full recognition of their duty to make such compensation before entering upon the lands of individuals without their approbation and consent. The appellant's grantor, by an instrument in writing made and executed under her hand and seal acknowledging a consideration, did grant and convey to the commissioners the privilege of constructing ditches and drains over the lands, in pursuance of the provisions of the general law, but the same was not acknowledged or executed in the presence of a subscribing witness and was never placed on record.

As the drains were constructed before the appellant made his purchase, he had notice of their existence even if he was ignorant that the written consent had been given by his grantor. As the owner of the land over which a portion of the ditch is constructed, and upon which a part of the tax is laid, he is in no better position to resist the collection of the tax than any other one of the persons appearing in the list upon whom the tax is assessed. An equitable title has been acquired as against him, and a conveyance from him can be enforced at any time by proper proceedings, if a further one is necessary to secure a legal title. It is unnecessary for us to consider whether the instrument should be acknowledged or executed in the presence of a subscribing witness, before a legal right would be acquired, for it is sufficient as an executory contract, acknowledg-

ing the payment of a consideration agreed upon, and as the appellant purchased with the knowledge that the easement was being used, the commissioners can at any time exact from the appellant and his grantor a full performance of the agreement. (*Wiseman* v. *Lucksinger*, 84 N. Y., 41.)

As no question is made as to the regularity of the proceedings in other respects, the order should be affirmed, with ten dollars costs and disbursements.

Haight and Bradley, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.