MARGARET MOORE et al., as Executors, etc., Appellants, *v.*
THE CITY OF ALBANY, Respondent.

In an action to recover back an assessment paid under protest for grading
a street in the city of Albany it was admitted that ordinances were
adopted by the common council, establishing the grade of the street and
ordering it to be excavated, filled and formed so as to conform to such
grade. and to the full width of the street. The work was done by contract in
pursuance of said ordinances, under direction of the street commissioner
and city surveyor, and as done was approved by the common council, and
accepted by the city. A portion of the street was filled higher than the
grade, involving an additional expense. *Held*, that if a vote of two-
thirds of the members of the common council was needed to ratify the
change of grade, it was to be inferred, from the facts admitted, that it
was so ratified, and as what the common council could originally have
ordained they could ratify, the change of the grade was no objection to
the assessment.

Where the street was cut down through elevations, a large amount of earth
was excavated on slopes outside of the street lines and on private prop-
erty so as to give the full width of the street at grade. Such excava-
tion was without the knowledge or express consent of the land-own-
ers. *Held*, that although the excavation, if made without such consent,
was a trespass, no harm was done thereby to the persons assessed, as
they could not be deprived by said owners of the benefit of the im-
proved street; and, therefore, that this was no objection to the assess-
ment.

In filling up ravines, in order to secure the full width of the street at grade,
a large amount of embankment was made outside of the street lines on
private property, without the express consent of the owners. *Held*, that
while this was without authority, as this mode of grading the street at
full width was the most economical, as these embankments were bene-
ficial to the land-owners whose interest it was to have their lands filled
up to grade, as it did not appear that any of said owners had objected to
the embankment, but had left it undisturbed for a number of years, and
had paid the assessments, and as, if any attempt at such disturbance
should be made by them, there was ample power under the city
charter (Tit. 7, § 1, chap. 77, Laws of 1870) to acquire title to the land
covered, no harm could come to those assessed, and they were not in
position to assail the assessment because of this method of construction.

In order to drain water under the embankments, drains were constructed
outside of the street, upon private property, without the knowledge or
express consent of the owners. It did not appear, however, that such
owners objected. *Held*, that the inclusion of the expense of their con-
struction did not invalidate the assessment.

*People, ex rel. Williams,* v. *Haines* (49 N. Y. 587); *In re Rhinelander* (68 id. 105); *In re Cheesebrough* (78 id. 232), distinguished.

After the assessment had been laid other persons assessed brought suit against the city to vacate the assessment, and recovered judgment at Special Term of the Supreme Court, adjudging the assessment void. *Held,* that plaintiffs were not entitled to the benefit of said judgment either as *res adjudicata* or *stare decisis;* that this court was not bound by the Special Term decision, and if based upon the same facts, it was erroneous. .

*Chase* v. *Chase* (95 N. Y. 373) ; *Bruecher* v. *Village of Port Chester* (31 Hun, 550), distinguished.

(Argued February 12, 1885 ; decided March 3, 1885.)

20 *wk big* 282 *affirmed*

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made November 28, 1884, which directed judgment for defendant upon a case submitted under section 1279 of the Code of Civil Procedure. ·

The facts stated in the case are substantially set forth in the opinion. .

*Franklin M. Danaher* for appellants. The assessment in question took private property for public use without just compensation. (Bouv. Law Dic., tit. "Prop. ;" 1 Schouler, 4, 5 ; 2 Austin's Juris. 831, 836; *In re Jacobs,* 31 Alb. Law Jour. 86 ; 1 Blackst. Com. 138; *Walker* v. *O., C. & N. R. Co.,* 103 Mass. 10, 14; *Wynehamer* v. *People,* 13 N. Y. 378, 396; Cooley's Const. Lim. 675; *Taylor* v. *Porter,* 4 Hill, 140; *Morris Canal Co.* v. *Townsend,* 24 Barb. 658; Mills on Eminent Domain, § 30; *Williams* v. *N. Y. C. R. R. Co.,* 16 N. Y. 97; *Carpenter* v. *Oswego R. R. Co.,* 24 id. 655; *Wager* v. *Troy U. R. R. Co.,* 25 id. 526; *Hatch* v. *Vermont C. R. R. Co.,* 25 Vt. 49; *March* v. *P. & C. R. R. Co.,* 19 N. H. 372 ; *Blake* v. *Rich,* 34 id. 282; *Craig* v. *R. C. & Brighton R. R. Co.,* 39 N. Y. 404; *Bloomfield G. L. Co.* v. *Calkins,* 62 id. 386; *Fletcher* v. *Auburn & S. R. R. Co.,* 25 Wend. 462 ; *Bloodgood* v. *M. & H. R. R. Co.,* 18 id. 9 ; *Davis* v. *Mayor, etc.,* 35 N. Y. 306 ; Colby's R. R. Law, 198–9 ; Mills on

Eminent Domain, §§ 32, 33; *Atlantic Tel. Co.* v. *C., etc., R. R. Co.*, 6 Biss. 158; *Gardner* v. *Newburg*, 2 Johns. Ch. 162; *Bellinger* v. *R. R. Co.*, 23 N. Y. 42; *Morgan* v. *King*, 35 id. 454; *Ex parte Jennings*, 6 Cow. 518; *Canal Comrs.* v. *People,* 5 Wend. 423; *People* v. *Pratt*, 17 Johns. 195; *McCord* v. *High*, 24 Iowa, 342; *Harris* v. *Thompson*, 9 Barb. 350; *Eaton* v. *B., C. & M. R. R.*, 51 N. H. 501; *Grand Rapids B. Co.* v. *Jarvis*, 30 Miss. 308; *Armond* v. *Green Bay Co.*, 31 Wis. 316; *Pettigrew* v. *Evansville*, 25 id. 23; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Hooker* v. *N. H. & N. Co.*, 14 Conn. 146; *Sinnischon* v. *Johnson*, 2 Harr. [N. J.] 129; *Mayor* v. *Wilson*, 5 Md. 138; *Brown* v. *C. & S. R. R. Co.*, 12 N. Y. 486; 24 Barb. 362; 57 Me. 481; 32 N. J. L. 219; 16 Ind. 441; 30 Mich. 308; *People* v. *Haines*, 49 N. Y. 587; *Olmstead* v. *Dennis*, 77 id. 378; *Matter of Cheeseborough*, 78 id. 232; *Matter of Rhinelander*, 50 id. 107; *Matter of Ryers et al.*, 72 id. 1; *Matter of Kendall*, 83 id. 612; *Matter of Van Buren*, 79 id. 384; *Ellis* v. *Welch*, 6 Mass. 246; *Parks* v. *Boston*, 15 Pick. 198; *B. & O. R. R.* v. *Thompson*, 10 Md. 77; *Brown* v. *Powell*, 25 Penn. St. 229; *Morris* v. *City of Peoria*, 41 Ill. 503; *Hendershott* v. *City of Ottumwa*, 46 Iowa, 658; *Ashley* v. *Port Hudson*, 35 Mich. 296; 2 Dill. on Mun. Corp., § 1045; Mills on Eminent Domain, §§ 30, 184, 185; *Glover* v. *Powell*, 10 N. J. Eq. 211; *City of Louisville* v. *L. R. M. Co.*, 3 Bush [Ky.], 417; *Henry* v. *Pittsburg & A. B. Co.*, 8 Watts & S. 85, 86; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; *Keasey* v. *Louisville*, 4 Dana, 154; *Reynolds* v. *Shreveport*, 13 La. 426; 58 Mo. 61; 65 Miss. 620; *Springfield* v. *Mayo*, 136 Mass. 10; *Simonds* v. *Walker*, 100 id. 112; *Franklin* v. *Fiske*, 13 Allen, 211.) The defendant is a trespasser. (*Eaton* v. *R. R.*, 51 N. H. 534; *Hickerson* v. *Mexico*, 58 Mo. 61; *Hunt* v. *Boonville*, 65 id. 620; Mills on Eminent Domain, §§ 184, 185.) An assessment having as its basis a trespass is absolutely null and void. (*People* v. *Haines*, 49 N. Y. 587; *Olmstead* v. *Dennis*, 77 id. 378; *Matter of Cheeseborough*, 78 id. 223; *Matter of Rhinelander*, 68 id. 108; *Matter of Kendall*, 83 id. 612; *Matter of Van*

*Buren,* 79 id. 384; 66 id. 400; 70 id. 452; *McCaffrey* v. *Albany,* 11 Hun, 613; *Trustees* v. *R. R. Co.,* 3 Hill, 567; *Hopkins* v. *Mason,* 42 How. 115; *Matter of Goldenberg,* 17 Week. Dig. 61; *Olmstead* v. *Denny,* 77 N. Y. 378; *McCaffrey* v. *Albany,* 11 Hun, 613.) The assessment was also absolutely null and void, by reason of the unlawful change of grade. (Charter of Albany, title 4, § 17; *Matter of Goldenberg,* 17 Weekly Dig. 612; *Matter of Deering,* 85 N. Y. 1; *Thompson* v. *Schermerhorn,* 2 Seld. 92; *Roosevelt* v. *Mayor, etc.,* 84 N. Y. 108; *Matter of Belmont,* 12 Hun, 558; *People, ex rel. Ward,* v. *Asten,* 49 How. 405; *Peyser* v. *Mayor, etc.,* 70 N. Y. 503.) The approval of the common council was of no force or validity. (Dillon on Mun. Corp. [3d ed], § 96; *In re Trustees,* 57 How. 500; *Birdsall* v. *Clark,* 73 N. Y. 73; *Foss* v. *Chicago,* 56 Ill. 354; *Jenks* v. *Same,* id. 397; *L. S. R. R.* v. *Same,* id. 455; *Hassen* v. *Rochester,* 67 N. Y. 528; *Meuser* v. *Risdon,* 36 Cal. 239; *Hydes* v. *Joyes,* 4 Bush, 464.) The decision in the *Clowery Case* is *res adjudicata* and binding on the court in this case. (*Chase* v. *Chase,* 95 N. Y. 373; *Brencher* v. *Port Chester,* 31 Hun, 550; *Delano* v. *Mayor,* 19 Weekly Dig. 141; *Matter of Stephens,* 26 Hun, 23.) The payment made by William Moore, on April 24, 1877, does not prevent or preclude a recovery of the amount and interest from the city. (Charter of Albany, title 8, § 2; id., § 6, title 8, as amended by chap. 536, Laws of 1871; § 8, title 6; § 4, title 11, as amended by chap. 536, Laws of 1871; id., title 8, § 8; also title 8, § 13, as amended by chap. 563, Laws of 1874.) This is a case of a payment made under duress, consisting both of coercion by law and coercion in fact. Taxes unlawfully levied and collected, thus paid, can be recovered back. (*Preston* v. *Boston,* 12 Pick. 7; *Arnold* v. *Cambridge,* 106 Mass. 352; *Hunnewell* v. *Charlestown,* id. 350; *Lond* v. *Same,* 99 id. 20; *Stephens* v. *Daniels,* 27 Ohio, 527; Cooley on Taxation, 568; 2 Smith's Lead. Cas. [6th ed.] 468; *First Nat. Bk.* v. *Watkins,* 21 Mich. 83; *Nikodemus* v. *East Saginaw,* 25 id. 456; *Kansas P. R. R. Co.* v. *Commissioners,* 16 Kans. 587; *Green* v. *School District,* 57 Penn. St. 433; *Ham* v. *Chester,* 15 Vt. 460; *Babcock* v.

*Granville,* 44 id. 325 ; *Falkner* v. *Hunt,* 16 Cal. 167 ; *Chandler* v. *Sanger,* 114 Mass. 364 ; *Westlake* v. *St. Louis,* 77 Mo. 47 ; 29 Alb. Law Jour. 57 ; *Railroad* v. *Commissioners,* 8 Otto, 541 ; *Atwell* v. *Zuleff,* 26 Mich. 118 ; Cooley on Taxation, 565 ; *Peyser* v. *Mayor, etc.,* 70 N. Y. 501 ; Bouvier's Law Dict., title Duress ; 1 Cowen's Treat., § 76 ; *Foshay* v. *Ferguson,* 5 Hill, 154 ; *Eadie* v. *Slimmons,* 26 N. Y. 9 ; *Preston* v. *Boston,* 12 Pick. 7 ; *Ginn* v. *Weissenberg,* 57 Penn. St. 433 ; *Babcock* v. *Granville,* 44 Vt. 325 ; 4 Am. Dec. 172–3, note ; *Strasburg Case,* 87 N. Y. 445, 456 ; Dillon on Mun. Corp., § 939 ; *Delano* v. *Mayor, etc.,* 19 Weekly Dig. 141 ; *Cook* v. *Andrews,* 40 N. Y. 547 ; *Marsh* v. *Brooklyn,* 59 id. 208 ; *Washburn* v. *Burnham,* 63 id. 132 ; *Guest* v. *Brooklyn,* 69 id. 506 ; *Dederer* v. *Voorhees,* 81 id. 153 ; *Banks* v. *Mayor,* 43 id. 188 ; *Dolan* v. *Mayor,* 62 id. 472 ; *Horn* v. *New Lots,* 83 id. 100 ; *Newman* v. *Supervisor,* 45 id. 676 ; *Home L. Ins. Co.* v. *Sherman,* 46 id. 370 ; *Pursell* v. *Mayor,* 85 id. 330 ; *Clark* v. *Pinney,* 6 Cow. 297 ; *Breucher* v. *Port Chester,* 31 Hun, 550.) The judgment in the *Clowery Case* entitles us to a verdict in any event, even without a vacating of the original assessment. (*Clark* v. *R. R. Co.,* 94 N. Y. 220 ; *Chase* v. *Chase,* 95 id. 373 ; *Matter of Deering,* 85 id. 1 ; *Delano* v. *Mayor, etc.,* 19 Week. Dig. 141 ; 26 Hun, 427 ; *Breucher* v. *Village of Port Chester,* 31 id. 550 ; 82 N. Y. 351 ; Code, § 1207 ; Moak's Van Santvoord's Pleadings, 190, 273, 830 ; *Hale* v. *Bank,* 49 N. Y. 626 ; *Stevens* v. *Mayor, etc.,* 84 id. 296 ; *Murtha* v. *Curley,* 90 id. 372 ; Cooley on Taxation, 535, 568 ; *Hatch* v. *Buffalo,* 38 N. Y. 276 ; *Charlestown* v. *Commissioners,* 109 Mass. 270 ; *Floyd* v. *Gilbreath,* 27 Ark. 675 ; *Knapp* v. *Brooklyn,* 28 Hun, 500 ; *Brewster* v. *Syracuse,* 19 N. Y. 116 ; 49 id. 592 ; 77 id. 385 ; *In re Lange,* 85 id. 307.) Chapter 459 of the Laws of 1881, passed June 4, 1881, and entitled " An act to confirm and levy certain assessments for street improvements in the city of Albany, and to regulate the collection thereof," is an act validating and confirming an illegal assessment. (*Mayor* v. *Horn,* 26 Marl. 194 ; *Butler* v. *Supervisors,* 26 Mich. 22 ; *Denny* v. *Mattoon,* 2 Allen, 377 ; *McDaniel* v. *Correll,* 26

Ill. 227; Cooley on Taxation, 233; *Foster* v. *Foster*, 129 Mass. 561; *Richards* v. *Rote*, 68 Penn. St. 248; *Menges* v. *Dentler*, 33 id. 495; *Clark* v. *R. R. Co.*, 94 N. Y. 217; *Chase* v. *Chase*, 95 id. 373; *Delano* v. *Mayor, etc.*, 19 Week. Dig. 141; 87 N. Y. 452; *Breucher* v. *Port Chester*, 31 Hun, 550.) The legislature cannot ratify, confirm or validate an unconstitutional assessment, nor an assessment void for reasons based upon defenses other than informalities or irregularities. (*People, ex rel. Hays,* v. *Brooklyn,* 71 N. Y. 495; *Tifft* v. *Buffalo,* 82 id. 204; *People, ex rel. Kilmer,* v. *McDonald,* 69 id. 363; *People* v. *Mitchell,* 35 id. 551; *Miller* v. *Boyes,* 6 Iowa, 330; *Marsh* v. *Chestnut,* 14 Ill. 223; 15 id. 218; *Conway* v. *Cable,* 37 id. 82; *People* v. *Williams,* 3 T. & C. 338; *Mays* v. *Hollbridge,* 23 Wis. 98; *Dean* v. *Carlton,* id. 590; *Tallman* v. *City of Janesville,* 17 id. 71; *Cross* v. *City of Milwaukie,* 19 id. 509; *Butler* v. *Supervisors,* 26 Mich. 26; 3 Wall. [U. S.] 327; *Hart* v. *Henderson,* 17 Mich. 222; *Forster* v. *Forster,* 129 Mass. 559; *Underwood* v. *Lilly,* 10 S. & R. 101; Cooley's Const. Lim. 381, 382; Cooley on Taxation, 229, 228, 227; *Richard* v. *Rote,* 58 Penn. St. 248; *Menges* v. *Dentler,* 33 id. 495; *Stronk* v. *Brown,* 61 id. 321; *Dederer* v. *Voorhees,* 81 N. Y. 159.) The act in question is unconstitutional and void, inasmuch as it deprives plaintiffs of property (that is of a vested right of action) without just compensation. (Cooley's Const. Lim. 369, 370; *Tifft* v. *Buffalo,* 82 N. Y. 210; *Breucher* v. *Port Chester,* 31 Hun, 550; *Delano* v. *Mayor, etc.,* 19 Week. Dig. 141; *Chase* v. *Knowles,* 95 N. Y. 373; *Van Antwerp's Case,* 56 id. 266; Cooley's Const. Lim. 361, 362; *Conway* v. *Cable,* 37 Ill. 82; *People* v. *Supervisors,* 70 N. Y. 229; *Matter of Townsend,* 39 id. 171; *Wanemeyer* v. *People,* 13 id. 390; *Shaffer* v. *Euer,* 54 Penn. St. 304; *Shank* v. *Brown,* 61 id. 321; *Underwood* v. *Lilly,* 10 S. & R. 101; *Rockwell* v. *Neary,* 35 N. Y. 304; *Stuart* v. *Palmer,* 74 id. 183; *Tifft* v. *Buffalo,* 82 id. 204; *N. Y. & O. M. R. R. Co.* v. *Van Horn,* 57 id. 477.) The act is void, being in violation of section 16, article 3 of the Constitution, which reads: "No private or local bill which

may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." (*People v. Hills*, 35 N. Y. 451; Laws of 1881, chap. 459, § 1; *Hurlburt v. Banks*, 1 Abb. N. C. 163.) As an exercise of taxation the said act is void. (*Wynehamer v. People*, 13 N. Y. 390; *Stuart v. Palmer*, 74 id. 183; *Dederer v. Voorhees*, 81 id. 159; Cooley on Taxation, 227, 233; Cooley's Const. Lim. 369, 379, note 1; *Butler v. Supervisors, etc.*, 26 Mich. 22; *People v. Brooklyn*, 71 N. Y. 495; *Howell v. City of Buffalo*, 37 id. 267; *Brewster v. Syracuse*, 19 id. 118.) As an exercise of the taxing power the statute is void, as being in violation of section 16, article 3 of the Constitution. (*People v. Mayor, etc.*, 4 N. Y. 419; *Hassen v. Rochester*, 67 id. 528; *Roosevelt v. Mayor, etc.*, 84 id. 113; 8 Mich. 298.) As an act levying a tax, it is unconstitutional and void, because the tax is levied without reference to benefits, and is unequal, unjust and not apportioned. (Const., § 6, art. 1; *Stuart v. Palmer*, 74 N. Y. 183; *Albany City Nat. Bk. v. Maher*, 9 Fed. Rep. 884; *Matter of Roberts*, 81 N. Y. 67; *People v. Comrs.*, 23 id. 196; *People v. Mayor, etc.*, 4 id. 419; *Col. L. Ins. Co. v. Supervisors*, 4 Abb. 87; *Comer v. Folsom*, 13 Wis. 219; *Smith v. Cleveland*, 17 id. 556; *Lexington v. McQuillan*, 9 Dana, 516; *Howell v. Bristol*, 8 Bush, 498; *R. R. Tax Cases*, 13 Fed. Rep. 722; *Orleans v. Cochran*, 13 La. Ann. 373; *Trustees v. Township Comrs.*, 36 N. J. 67; *Cummings v. Nat. Bk.*, 101 U. S. 153; *Nat. Bk. v. Kimball*, 103 id. 734; *People v. Mayor, etc.*, 4 N. Y. 419; Laws 1881, chap. 459, § 1.) As an act levying a new tax, or as one confirming a void assessment, it is unconstitutional, because it does not give the people taxed notice, or an opportunity to be heard. (*Overing v. Foote*, 65 N. Y. 267; 17 id. 383; 49 id. 243; 40 Barb. 644; *Stuart v. Palmer*, 74 N. Y. 189; *De Peyster Case*, 80 id. 572; *Albany City Nat. Bk. v. Maher*, 9 Fed. Rep. 884; Const., § 6, art. 1; *Gatch v. Des Moines*, 3 Am. & Eng. Cas. 622, note, 630; 65 N. Y. 277; Cooley on Taxation, 229; *Matter of Lowden*, 89 N. Y. 554; *Lang v. Kiendel*, 27 Hun, 26; *People v. Supervisors*, 70 N. Y. 234; *Matter of Zborowski*,

68 id. 97; Cooley's Const. Lim. 404.) As an act imposing a tax, it is void as being in conflict with section 20, article 3 of the Constitution. It does not distinctly state  *  *  *  the object to which it (the tax) is to be applied. (Laws of 1881, chap. 459, § 1; *Sun Ins. Co.* v. *City of N. Y.*, 5 Sandf. 10; *People* v. *Supervisors*, 17 N. Y. 235; 52 id. 556; *Bank* v. *Supervisors*, 27 Barb. 583; *People* v. *Ins. Co.*, 92 N. Y. 328.) The act is unconstitutional because it does not state the tax, and it refers to another law, to fix such tax. (Const., art. 3, § 20; *People* v. *Supervisors*, 52 N. Y. 556; *Hurlburt* v. *Banks*, 1 Abb. N. C. 157; *Hanlon* v. *Supervisors*, 57 Barb. 383.) For its trespasses and wrongful acts, the city is liable the same as an individual. (*Ashley* v. *Port Hudson*, 35 Mich. 296; 2 Dillon on Mun. Corp., §§ 1045, 1048; *In re Jacobs*, 31 Alb. Law Jour. 86; *Brown* v. *Maryland*, 12 Wheat. 419; Dillon's Mun. Corp. [3d ed.], § 992, note 1; Cooley's Const. Lim. 542, note; *Story* v. *N. Y. El. R. R. Co.*, 90 N. Y. 122; 11 Abb. N. C. 288; *Arnold* v. *H. R. R. Co.*, 55 N. Y. 661; *Doyle* v. *Lord*, 64 id. 432; *In re Jacobs*, 31 Alb. Law Jour. 85.) Moore was not a party or a privy to the contract of grading, cannot be estopped by not doing an act which the law would not allow him to do, or for not presenting a protest to a body that was not authorized to receive it. (*Tone* v. *Columbus*, 3 Am. & Eng. Corp. Cases, 661; *Viele* v. *Judson*, 82 N. Y. 32; 22 Mich. 104; *Davenport* v. *Davenport*, 43 Iowa, 301.) The assessment is void as an entirety for want of a legal basis, and it may be resisted and its invalidity asserted at all times. (*Chase* v. *Chase*, 95 N. Y. 381.) A void assessment cannot be divided at common law. (*Matter of Stephens*, 26 Hun, 22; *Matter of Willis*, 30 id. 13; *Matter of Mutual Life Ins. Co.*, 89 N. Y. 535; *Matter of Merriam*, 84 id. 596; *Matter of Mead*, 74 id. 216.)

*Simon W. Rosendale* for respondent. The city had the right to grade the street, even if by so doing adjacent property was cut off from it, or access rendered difficult from it. (Dillon's Mun. Corp. [3d ed.], § 900.) The reason an occupation of lands has been held to be a taking has been, where thereby the useful-

ness of the land has been effectually destroyed or impaired. (*Pumpelly* v. *Green Bay Co.*, 13 Wall. 160.) When land is acquired for the purposes of a street, changes as to grade which might be required must be presumed to have been contemtemplated when the land was taken and devoted to the purposes of a street as incident to the enjoyment of the easement which was then acquired. (*Henderson* v. *Minneapolis*, 31 Alb. Law Jour. 119.) A conveyance for a special purpose carries with it all rights necessary to use it for the purposes for which it was conveyed. (*Adams* v. *Conover*, 87 N. Y. 422.) There is no damage from change of grade-line shown to plaintiff's testator, excepting that the amount of his assessment was thereby increased some $80, which is not such a substantial damage as to afford a ground to vacate the entire assessment, or, as in this action, to recover back the whole amount of the assessment paid by him. (*In re Petition of Mut. L. Ins. Co.*, 89 N. Y. 530.) The fixing of the grade-line being wholly within the power of the common council, the due approval of the assessment and apportionment by the common council, with the work and grade-line as actually done, cured this defect and ratified the graded line, as if originally thus passed. (*Edwards* v. *City of Watertown*, 61 How. Pr. 463.) As plaintiffs' testator saw the work in progress, and made no objection to the manner of the performance of the work, they are estopped by his acts. (*Matter of McGowan*, 18 Hun, 434; *In re Lewis* v. *Utica*, 67 Barb. 456.) A party may waive a statutory, and even constitutional, provision in his favor. (*In re Cooper*, 93 N. Y. 507.) Plaintiffs are also estopped by their testator's payment, which was voluntary. (*Sexton* v. *Pepper*, 28 Hun, 31; *Jacob* v. *Morange*, 47 N. Y. 57.) As the assessment was valid and re-assessed by chapter 459 of the Laws of 1881, plaintiffs could not recover. (*In re Van Antwerp*, 56 N. Y. 261; *In re Woolsey*, 95 id. 135; *People* v. *Flagg*, 46 id. 401; Note on State Power of Taxation, 16 Fed. Rep. 201; *People* v. *Mayor*, 4 N. Y. 419; *Town of Guilford* v. *Supervisors*, 13 id. 143; *Tift* v. *Buffalo*, 82 id. 204; *People* v. *McDonald*, 69 id. 362; *Brevoort* v. *Brooklyn*, 89

id. 128; *In re Clementi* v. *Jackson*, 92 id. 591; *Stuart* v. *Palmer*, 74 id. 183; *People* v. *Nearing*, 27 id. 306.) The owners of the land upon which the embankment and culverts were made, having acquiesced in the same, the appellants cannot have their assessment vacated upon the ground that there was no authority to use the lands for these purposes. (*In re Woolsey*, 95 N. Y. 135; *Ferguson* v. *Flandrau*, 5 Bush, 231; *Matter of Ingraham*, 64 N. Y. 310; *Matter of McGowan*, 18 Hun, 434.) If the court finds that some illegal items were added on the assessment it may, in an action like this, award judgment for that amount, and dismiss the complaint as to the rest. (*Strasburg* v. *Mayor, etc.*, 87 N. Y. 452; *Delano* v. *Mayor, etc.*, 32 Hun, 144.)

EARL, J.  Proceedings were instituted on behalf of the city of Albany to grade McCarty avenue, one of the public streets of that city, which was sixty-six feet wide. Ordinances were adopted by the common council, establishing the grade of the street and ordering it to be excavated, filled and formed so as to conform to the grade established, and providing that the excavating, filling and forming be done to the full width of the street, with sufficient angles of slope to protect the banks, and in height and depth to the grade-line of the street.

In pursuance of the ordinances, the board of contract and apportionment caused the street to be excavated and graded by contract at a total cost of $15,783.26. The work was done under the direction and supervision of the street commissioner and the city surveyor, and was accepted by the city. In the performance of the work a portion of the street was filled higher than the established grade, and for that purpose nearly 5,000 yards of earth were used; and where the street was cut down through elevations, there were nearly 6,000 yards excavated on the slopes outside of the street lines upon private property, so as to secure the full width of sixty-six feet at grade, and such excavation was without the knowledge or express consent of land-owners; and where the street passed over ravines, there were nearly 26,000 yards of embankment out-

side of street lines upon the slopes of the street, so as to secure the full width of sixty-six feet at grade, and such embankment was upon private property without the express consent of the owners; and in order to drain water under the embankments, there were constructed nearly 500 feet of drains outside of the street lines, upon private property, without the knowledge or express consent of the owners thereof.

All the work thus done outside of the street lines was suitable and proper to make the street according to the requirements of the ordinances, and the expense of such work was included in the total cost of the work, which was assessed upon the property supposed to be benefited by the street improvement. The total assessment upon the property of plaintiffs' testator was $2,164.62, in which was included $690.73, his proportionate share of the expense of extra filling above the required grade within the street lines, and the work done outside of street lines as above specified. The testator paid the assessment against his property under protest, and subsequently his executors commenced this action upon an agreed state of facts to recover back the money thus paid, as they claimed, under coercion, on the ground that the entire assessment was rendered void by the inclusion therein of the expenses of raising the grade, and of the work outside of the street lines on private property as above specified.

The learned brief submitted to us on behalf of the appellants has failed to convince us that the assessment assailed is invalid.

*First.* As to the extra filling within the street lines. This was made under the direction and with the assent of the city officers having the work in charge. The entire work was subsequently accepted by the city, and it is entirely clear that the work as done was subsequently approved by the common council, and thus may be held to have been ratified by them. What they could originally have ordained they could subsequently ratify. If a vote of two-thirds of the members of the common council was needed to ratify the change of grade, we may infer from the facts submitted that such was the vote.

The ratification seems to have been unanimous. Plaintiffs, who assail the assessment and claim that the grade was not properly authorized, should have shown that the requisite votes were not given and recorded in the common council, instead of admitting that the city accepted the work and paid for it, and that the common council authorized and confirmed the assessment for the expense of the same.

*Second.* As to the excavation outside of the street lines. This was clearly a trespass upon private property if made without the consent of the owners. If in excavating with proper care within the street lines the adjoining soil had fallen down into the street, its owner would have had no legal cause of complaint. (*Radcliff's Executors* v. *Mayor*, etc., 4 N. Y. 195.) But the public authorities while grading and repairing a street have no right to go upon adjoining land and purposely take the soil thereof for any purpose. If such soil be needed for the purpose of the street, they must include the same within the street lines, or must procure the consent of the owner, or acquire the right to take the same in some of the other ways known to the laws. But no harm was done to the persons assessed by taking this soil. The street was graded and improved and they have the full benefit of it, and adjoining land-owners cannot deprive them of it. It is used without trespassing upon them, and they cannot close or interrupt the same. It was much cheaper thus to take the soil than to protect the street by a retaining wall or in any other way, and thus the trespass, if one was committed, was really for the benefit of the persons assessed. The persons whose soil was taken may, unless debarred in some way by their own acts, sue the city or the persons who took their soil for the trespass, but the assessment cannot on that ground be assailed as invalid, as all the work was for the improvement of the street within the street lines.

*Third.* As to the embankments outside of the street lines. In grading a street it seems to us clear that the public authorities have no right to invade private property outside of the street lines. If it becomes necessary to use or interfere with

such property, they must in some way acquire the right to do so. These embankments were built for the purpose of making the street within the street lines. In order to grade the street to the full width thereof, it was necessary either to build retaining walls on the sides of the street within the street lines, or to support the street by sloping embankments upon the adjoining lands. It is evident that the latter mode was the most reasonable and economical. The lands outside of the street lines are not permanently occupied or used for the street or appropriated to public travel. They remain in the possession and occupancy of the owners thereof, subject to the burden of the earth cast thereon. These embankments are evidently not injurious to the adjoining owners, as it is for their interest to have their lands filled up to the grade of the street. It cannot be presumed that they will dig away and remove these embankments, and if they should, the street would still remain and the city could support its sides in some other way. The only practical remedy for the owner of lands thus invaded is to sue the city or those who placed the earth upon his lands without his consent, express or implied, for the wrong, and in such an action he can recover his entire damage for a permanent appropriation of his land for the embankment. (*Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 423.) It does not appear that any of the owners of the land thus invaded make any objection to the embankments. They could, if they had desired, have restrained the deposit of earth upon their lands by an equitable action. That they did not do. They could have objected to the deposit of the earth, and it does not appear that they did that. They did not even object to the assessment made upon their lands, on account of these embankments, when they appeared before the board of contract and apportionment, and before the common council, in reference to the assessment. These embankments have remained there since the early part of the year 1877, and they have not been disturbed, and there is the highest probability that they never will be. If any attempt should be made by the land-owners to disturb them, there is ample power under the city charter to vest the title to the

lands in the city for the purpose of the street. (Laws of 1870, chap. 77, title 7, § 1.) These embankments are not the street, but are there simply for the support of the street which is upon land acquired for the purpose thereof, and their cost was a necessary and proper expense in the construction of the street. Taking into account the open and notorious construction of these embankments, the fact that they have remained there for a number of years, and that they are probably beneficial rather than injurious to the land-owners, it may be inferred that they are now where they are placed by the license and consent of the land-owners. Under such circumstances these plaintiffs cannot claim that they will not, nor may not, receive any benefit from the street, and they are not in a position to assail the assessment for its construction as invalid.

*Fourth.* As to the drains upon lands outside of the street lines. They were necessary for the protection of the street and the adjoining lands, and for reasons already given the inclusion of the expense of their construction does not render the assessment invalid.

There is one fact to which the appellants attach much importance, which has not yet been noticed. After the assessment had been laid, Edward Clowery and another, whose lands had been assessed, commenced an action in the Supreme Court against the city, to vacate and remove the assessment as a cloud upon their title, and they recovered a judgment in February, 1881, which declared the assessment null and void for the same reasons now urged by these appellants, and vacated the same as to the lands of those plaintiffs. William Moore, the deceased testator, was not a party to that action, and yet his executors claim the benefit of that adjudication. We know of no principle which will enable these appellants to claim the benefit of that judgment as *res adjudicata* in their favor. It is a general rule that estoppels by judgment must be mutual, that a party cannot claim the benefit of a judgment favorable to him unless he would be bound by a judgment in the same matter if adverse to him. If the judgment in that action had been adverse to the plaintiffs, then it certainly would not have

bound William Moore, and he would still have been at liberty to assail the assessment and try all the questions relating thereto *de novo* upon their merits. A judgment as to all matters decided thereby, and as to all matters necessarily involved in the litigation leading thereto, binds and estops all the parties thereto, and their privies in all cases where the same matters are again brought in question. Such is the doctrine of *res adjudicata.*

There is also the doctrine of *stare decisis*, which is of a different nature. When a court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same, and this it does for the stability and certainty of the law. It was the latter doctrine that was illustrated and enforced by the cases cited by the learned counsel for the appellants. In *Chase* v. *Chase* (95 N. Y. 373), we decided that an assessment which in another action had been held to be invalid, did not constitute such a defect in title to land as would justify a purchaser on account thereof to refuse to complete his purchase. We held so not because the purchaser was bound by the former adjudication to which he was not a party under the doctrine of *res adjudicata,* but because under the doctrine of *stare decisis*, the assessment which upon all the facts the court of last resort had held to be invalid, could not constitute a dangerous cloud upon title, as that court would adhere to its decision (which would also be binding upon inferior courts), whenever the same assessment again came in question. So here, if these appellants, instead of invoking the support of a decision rendered at the Special Term of the Supreme Court, had cited a decision of this court condemning this assessment upon the same facts now produced they would have had a controlling authority in their favor. In the case of *Bruecher* v. *Village of Port Chester* (31 Hun, 550), the same doctrine was also applied. This court, in a prior case (71 N. Y. 309), had held that the assessment there considered was void, and the Supreme Court in the case cited simply followed and applied the law thus laid down. If, therefore, the case of *Clowery* v.

*The City* was based upon the same facts existing here we think it was erroneously decided, and we do not feel called upon to yield to it as authority. Neither the doctrine of *res adjudicata* nor that of *stare decisis* applies.

It may be said, however, that subsequently to the rendition of that judgment, the act chapter 459 of the Laws of 1881, for the confirmation of this assessment, was passed, and thereafter the plaintiffs in that action paid fifty per cent of the assessment against them under the provisions of that act, and thus waived their objections to the assessment, and acquiesced in the occupancy of their lands by the embankments forming the slopes of the street if such embankments were, as now claimed, upon their lands.

In holding this assessment to be valid we do not come in conflict with any authority in this court. In *People ex rel. Williams,* v. *Haines* (49 N. Y. 587), drainage commissioners appointed under an act of the legislature made drains through lands without obtaining the title to the lands taken, and made an assessment upon lands supposed to be benefited for the expense of the drains, and the assessment was held to be invalid because the drains were laid through the lands without first obtaining grants of the right to make them from the owners. We held that there was no power in the commissioners to construct the drains and assess the cost upon the property benefited without having first acquired the title to the lands used, and we further held that the commissioners had no power subsequently to the assessment to acquire the title; and thus there was in that case no certainty that the benefits for which the assessment was imposed would be enjoyed. In the *Rhinelander Case* (68 N. Y. 105) and the *Cheesebrough Case* (78 id. 232), sewers were constructed through private property without the consent of the owners. In those cases there was no law under which the title to the lands used could be obtained, and the assessments were assailed by the owners of the land wrongfully invaded. The *Ingraham Case* (64 N. Y. 310) was much considered in this court; and there, where a sewer was constructed upon private property, we held that mere permission from the owners would

be sufficient to authorize the construction of the sewer, and that because it did not appear that such permission was not given, or that the owners objected, the legal presumption was that permission was given ; and that if no consent was given it was not a valid ground of objection that a trespass had been committed upon the lands of another. In that case the court said : "It is not enough to establish that in carrying out the improvement they have committed a trespass upon the lands of another party. That is a matter which rests between the city authorities and the person affected, and is not a valid ground of objection by a party assessed who had no interest in the land upon which the same is laid." The general language quoted may need qualification in its application to some cases to bring it into entire harmony with other authorities above cited. But the rule laid down and the language quoted is quite applicable to a case like this where it does not appear that the owners of the land invaded object, and where there is ample authority, if they should object, to acquire the title, and where also in any event the street will remain and the persons assessed for benefits will have the benefit of the same.

We have not found it important to consider the effect of the confirmatory act above referred to, and have reached the conclusion independently of that act, that the judgment should be affirmed.

All concur.

Judgment affirmed.