PEOPLE *ex rel*. ALBANY LAND IMP. & BLDG. CO. *v.* MAHER *et al.*

(*Supreme Court, General Term, Third Department.* February 24, 1890.)

ESTOPPEL—ACQUIESCENCE IN PUBLIC IMPROVEMENTS.

Where an owner of unimproved lands in a city, for the purpose of converting them into building lots, conveys a portion to the city for a street, and then petitions the common council for an ordinance providing for the grading and paving of the

entire street, and for flagging, etc., the sidewalks, he cannot object that the contract for the work is illegal because it provides that the street shall be graded for its entire width, and that the necessary excavations would involve a trespass upon his lands outside the lines of the street, where all the proceedings had his approval until the cost of the work, as shown by the lowest bid, was made known.

*Certiorari* to review the determination of the board of contract and apportionment of the city of Albany, to the effect that the contract entered into by the city with the National Vulcanite Company for the grading and paving with Trinidad asphalt of Pine avenue is legal and valid. The hearing was had and determination made upon objections filed by the relator to the legality and validity of the letting, award, and contract; the proceeding being in pursuance of the provisions of the Albany city charter. The return to the writ brings before the court all the proceedings preliminary to the contract, the contract itself, the relator's objections, the evidence given, and the determination of the board.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*E. Countryman,* for relator. *A. Hessberg,* for respondents.

LANDON, J. The relator was the owner of the land on both sides of Pine avenue, including the avenue itself. The lands were unimproved, and the relator, desiring to convert the same into building lots, first made a conveyance of the land for the avenue to the city, and procured the acceptance thereof. It then petitioned the common council for a law providing for the grading of the avenue, and paving the road-way with Trinidad asphalt, and for flagging, sodding, and setting out trees on the sidewalks thereof in accordance with the charter. The president of the relator signed the petition in its behalf. He was also a member of the common council, and as a member of that body aided in procuring it to pass a law authorizing the improvement to be made substantially as prayed for, and "according to plans and specifications to be prepared by the city engineer, and approved by the board of contract and apportionment." The city engineer thereupon prepared the plans and specifications of the proposed improvement, and the same were approved by the board of contract and apportionment. Advertisement for proposals to make the improvement was duly made. Three bids were received, of which that of the National Vulcanite Company was the lowest. When the bids were opened by the board, the relator, through its president, objected that the price was too high, and asked that the bids be rejected, and the work readvertised. No objection was made to the plans and specifications. The board, under the charter, had the power, and it was their duty, if in their opinion the price was too high, and it was desirable that new bids be received, to reject the bids, and cause a new advertisement to be made. The board refused the request of the relator, and awarded the contract to the National Vulcanite Company. The relator now asks us to review this action of the board. Assuming that it is proper for us to do so, we find nothing in the return to lead us to question the regularity or propriety of their action. It was for the board to decide whether the bid which they accepted was too high. There is no reason to doubt that they gave the matter and the objection of the relator proper consideration, and acted wisely and discreetly in the disposition made. The contract was thereafter entered into in proper form. The relator, as permitted by the provisions of the charter, thereupon filed objections with the board, alleging various grounds of error, illegality and irregularities in the contract, and in the preliminary proceedings. The board afterwards, sitting in a judicial capacity, had a hearing in the matter, as provided in the charter, in which testimony was taken, and all the parties in interest were heard, and thereupon overruled the objections, and affirmed the validity of the contract. Several of the objections investigated upon the hearing are not renewed upon this argument.

The main objection ηow urged is that the contract is illegal, because it provides that the street shall be graded for its entire width; that there are hills to be excavated and valleys to be filled; that the contract provides that the slopes of the excavations and embankments shall be made in shapely form; and that to do this will be to trespass upon the relator's land outside of the lines of the street. It is true that these slopes will be formed outside the street lines, and upon the relator's land. We think the relator's petition, and the law which the petition prayed for, and which was passed in pursuance of the relator's prayer, invite the city to enter upon the relator's land so far as it may be necessary to grade and pave the street, including both carriage-way and adjoining sidewalks; for both are mentioned in the petition and law, which speak of the street in its entirety, without any suggestion of limitation of width. The law provides for plans and specifications. It is impossible to suppose that these were not known to the relator, and approved by it. The contract is based upon and incorporates them. Upon the testimony it is plain that all the proceedings had the approval of the relator until the lowest bid and bidder were made known. The relator, having promoted the scheme until it became the duty of the board to act upon their official responsibility upon the final direction of it, we think ought to be, under the circumstances here presented, estopped from asserting an objection which it at first impliedly waived, and only asserts when further control passes from its hands. If this objection had been made at the outset, it is improbable that the deed of the street would have been accepted or any law passed. The relator's consent to the entry upon its land was not retracted until after the city had acted upon it, and entered into an important contract with the National Vulcanite Company, based upon such consent. The relator cannot release the city from its contract, and ought not, therefore, to retract the consent upon which it is based. But, if no technical estoppel exists, the contract is not necessarily invalid. The city has the right to make the necessary excavation, and, if the relator's land falls into it, the relator is not legally injured. *Radcliff's Ex'rs* v. *Mayor, etc.*, 4 N. Y. 195. If the relator objects to the trimming or grading of the slope of the excavation, that part of the work is so slight in amount or importance that it may be left to the relator to do or omit. If the relator objects to the deposit of the slope of the embankments upon its land, there is, as was said in *Moore* v. *City of Albany*, 98 N. Y. 408, ample power under the city charter to vest the title to the lands in the city for the purpose of the street. The determination of the board of contract and apportionment is affirmed, with $50 costs and disbursements. ʻAll concur.