KENOA *et al. vs.* JOHN MEEK.

EJECTMENT. BEFORE ALLEN, C.J.

OCTOBER TERM, 1871.

History of land titles in this Kingdom reviewed.

The Mahele does not give a title; a subsequent award by the Land Commission or Minister of Interior is necessary.

A grantee under the Mahele, who failed to take proper steps to perfect his title, is barred from asserting it.

### DECISION OF ALLEN, C.J.

This is an action of ejectment, brought to recover a certain Ili of land, and the plaintiff claims title by the Mahele of February 4th, 1848, and the award issued by the Minister of the Interior in 1862, under the Act of 1860, based upon said Mahele.

The defendant claims by a Royal Patent dated January 27th, 1851, to A. Bishop, and a deed from Bishop to himself of May 28th, 1851. The ancestor of plaintiffs received from His Majesty Kamehameha III. the following evidence of title as made by the Mahele.

PAHOA'S.—The one-half land Ahupuaa Kalena Island.—One-half Kalena, Ili of Waianae Ahupuaa, Waianae, Oahu. I consent to this division, it is good; Pahoa's is the one-half land mentioned above; consent is given to take it before the Land Commissioners.

(Signed) KAMEHAMEHA (Seal).

Royal Palace, February 4, 1848.

----

KAMEHAMEHA'S. — The one-half Land Ahupuaa Kalena Island.—One-half Kalena, Ili of Waianae Ahupuaa, Waianae, Oahu. I consent to this division, it is good. To the King belongs the one-half land mentioned above. I have no right in it.

(Signed) (his X mark) PAHOA (Seal).

Witness:

(Signed) S. P. KALAMA.

Royal Palace, February 4, 1848.

A brief history of the legislation on the general subject of land titles is necessary to decide on the rights of these parties.

It appears by the Act of the 13th day of June, 1848, that His Majesty the King surrendered to his chiefs and people the greater portion of his royal domain, and placed the same in the keeping of the House of Nobles and Representatives, or such

person as they may appoint, and to be disposed of in such manner as the House of Nobles and Representatives may direct.

Certain lands were confirmed as the private lands of His Majesty Kamehameha III., to have and to hold to himself, his heirs and successors; and certain other lands were set apart as the lands of the Hawaiian Government, subject to the rights of tenants, to be disposed of by the Minister of Interior according to the provisions of law, with the approval of His Majesty in Privy Council. And the land in controversy was so set apart to be disposed of as aforesaid.

A Board of Land Commissioners was established in 1846 for the investigation and final ascertainment or rejection of all claims of private individuals, whether native or foreign, to any landed property acquired anterior to the passage of this act. The statute declared that this board shall be in existence for two years.

On the 13th of June, 1848, the Legislature extended the powers of the board for such further time as might be necessary for the examination, settlement, and award upon all such claims as may have been presented to the said board. By the Act of July 20, 1854, it is declared that the Board of Commissioners to quiet Land Titles shall be dissolved on the last day of March, 1855. An Act approved August 10th, 1854, was passed for the relief of Konohikis, the preamble of which is as follows:

"Whereas, certain Konohikis, who received lands from His Majesty at the great division of lands in the year 1848, did from accidental causes fail to present their claims to such lands to the Board of Commissioners to quiet Land Titles within the time allowed by law, and have in consequence been barred; therefore: Be it enacted by the King, the Nobles and Representatives of the Hawaiian Islands, in Legislative Council assembled: 1. That any Konohiki who received land from the King at the division of lands in the year 1848, and who failed, from any cause whatsoever, to present his claim for such land to the Board of Commissioners to quiet Land Titles previous to

the 14th day of February, A.D., 1848, may present his claim for such land to the said Board of Commissioners at any time previous to the first day of November next ensuing; and the said Board of Commissioners are hereby authorized to receive, hear, and determine all claims that may be presented to them, under the foregoing provisions, in like manner as if such claims had been presented to them previous to the 14th day of February, A.D., 1848."

An additional act was passed in 1860 for the relief of certain Konohikis whose names appear in the division of lands from Kamehameha III.

"Whereas certain Konohikis, who were entitled to lands under the division of 1848, have for certain causes failed to obtain their awards from the Land Commission within the time specified by law, and for that reason are destitute, therefore: The Minister of the Interior is hereby authorized to grant awards for their lands to all Konohikis who have failed to receive the same from the Land Commission, provided that the names of all such Konohikis appear in the Mahele Book of the year 1848; and all awards so granted by said Minister shall be equally valid with those of the Land Commission."

And by this it appears that the Konohikis had again failed to obtain their awards from the Land Commission.

It appears that laws were passed from time to time to protect this class of persons, and it is, in this instance, an unfortunate act of negligence that he failed to present his claim and secure his rights.

As appears by the certificate of His Majesty the King, he consented to the division of the Ili of Waianae, as claimed by the plaintiffs, but it was coupled with the condition that it should be taken before the Land Commission for their adjudication; Pahoa, the ancestor, failed to present his claim within the time prescribed by law, and his rights, in common with all other Konohikis, were declared by law as barred. Prior to this time, a Royal Patent was issued to A. Bishop, and the title at that time being in the Government, it passed to the grantee

therein named, and of course a subsequent conveyance would have no legal effect as against the prior grant.

The counsel for the plaintiffs contend that the Royal Patent does not vest any better legal title to the land in Pahoa and his heirs than he had before the date of the patent, as against the Government and the defendant. The land was set apart as the land of the Government by special enactment, subject to the rights of tenants, and as Pahoa's right was not confirmed by the Land Commission, the entire interest remained in the Government.

The Mahele itself does not give a title. It is a division, and of great value because, if confirmed by the Board of Land Commission, a complete title is obtained. But it was open to examination, and if the evidence was satisfactory that the Konohiki was entitled to the land according to the principles which governed that Board of Land Commission, their award gave a complete title. By the Mahele, His Majesty the King consented that Pahoa should have the land, subject to the award of the Land Commission.

It appears by the whole course of legislation that an award of the Board of Land Commission was necessary to perfect the title until, by the law of 1860, the Minister of the Interior was authorized to grant awards.

In my view, as Pahoa neglected to perfect his title before the Board of Land Commission, but suffered his claim to be barred, the legal title remained in the Government, and the Royal Patent to A. Bishop conveyed their title to him, and as it was prior to the patent issued to Pahoa, it must prevail.

Let judgment be entered with costs, for the defendant, as of the last day of the October term.

*R. H. Stanley,* for plaintiffs.

*R. G. Davis & A. F. Judd,* for defendant.

Honolulu, January 2d, 1872.