## EMMA A. NAWAHI *v.* THE FIRST TRUST COMPANY OF HILO, LIMITED.

### No. 1939.

ARGUED NOVEMBER 20, 21, 1930.       DECIDED MAY 15, 1931.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity brought by a *cestui que* trust against the trustee, the main prayer being for an accounting and for a reconveyance of the trust property upon payment by the complainant of any amount found due to the trustee. From a decree dismissing the bill the case came to this court by appeal and the decree was set aside and the cause remanded to the trial judge with the following instructions: "to appoint a master with power to sum-

mon witnesses, administer oaths to them and examine them and whose duty it will be to restate the account for the whole period of the trust; to examine the original books of account of the trustee and all other books and papers at any time kept by the trustee with reference to this trust; as far as may be deemed necessary, to examine the officers and agents of the trustee of the past and/or present and any other witnesses available with reference to any disputed transactions of the estate; to make findings as to the correctness and propriety of any and all charges and credits and other items in the accounts; to use in his restated account the system of daily balances throughout the trust period and to calculate interest in favor of the trustee on all debit balances at the rate of 7½% per annum, except with reference to the item of money borrowed by the trustee for the purposes of the trust from the First Bank of Hilo, Limited, as to which the rate of interest shall be that only which the trustee was obligated to pay to the bank; to charge against Mrs. Nawahi simple interest only and to be guided in that respect by the principles of computation stated in the foregoing opinion; to ask the trial court for directions upon all questions of law and procedure with reference to which he may be in doubt; to do any and all other things found to be necessary to the restating of a full, true and accurate account between the parties; and to report his findings and recommendations, as well as his restated account, to the trial court for consideration by that court." *Nawahi* v. *Trust Co.,* 30 Haw. 359, 391, 392. In that opinion the allegations of the pleadings were set forth at some length as also were the questions then argued and as much of the evidence as seemed necessary for their disposition. The earlier history of the case, therefore, need not be here repeated. Upon the cause being remanded a master was ap-

pointed who heard evidence, made findings of fact and stated conclusions of law. A restated account, incorporating his findings and conclusions, was submitted by him to the circuit judge. The latter in turn, after hearing the parties upon exceptions to the master's report, made certain alterations in the findings and the conclusions of the master and on July 15, 1929, entered a decree, from which the plaintiff appealed to this court. After the presentation by the appellee of a motion to dismiss the appeal the appellant, on January 14, 1930, filed a withdrawal of the appeal and on the same day sought and obtained the issuance of a writ of error. In other words, the writ of error was sued out on the day next preceding the last day allowed by law for the filing of a petition for a writ of error and, as stated by counsel at the argument herein, the petition and the assignments of error were prepared in haste.

There are twenty-eight assignments of error. While upon an appeal in an equity case this court has the power, subject to certain limitations, to weigh the evidence and to make its own findings of fact contrary, if necessary, to the findings made by the trial judge, upon writ of error this court has not the same freedom of action. The statute (Sec. 2524, R. L. 1925) expressly commands that in a proceeding of this nature "there shall be no reversal * * * for any finding depending on the credibility of witnesses or the weight of evidence." This language is clear and unambiguous. Its meaning cannot be misunderstood. It has been many times construed by this court to mean just what it says, that upon a writ of error this court cannot examine into the credibility of the witnesses or weigh the evidence. "Under our statute relating to writs of error (L. 1919, Act 44) and under the repeated decisions of this court there can be no reversal upon a writ of error of 'any finding depending on the credibility of witnesses or the

weight of evidence.' " *Grosjean* v. *Hiyama,* 28 Haw. 211, 215. It may, however, for this is a question of law, consider whether there is sufficient evidence, which can properly be regarded as being more than a mere scintilla, to support each of the findings made by the trial judge. With these limitations in mind, the twenty-eight assignments of error will be considered.

1. The first is that the court erred "in finding that the trust agreement entered into on October 27, 1914, related back to September 30, 1914, contrary to the finding of the master, who held that it operated only in future of its date." That instrument contains the following clause: "It is hereby agreed that the trust period hereinbefore referred to shall be for fifteen years from September 30, 1914, provided, however, that if at the end of that period the debts and obligations hereinbefore referred to shall not be paid and fully discharged, the trust period shall continue thereafter until the final payment and discharge of all debts, charges and advances for which this deed of trust is security." There is no provision in the deed directly or indirectly modifying the statement just quoted. The obvious meaning of the statement is that the trust period began September 30, 1914, and continued for fifteen years at least. The trustee, although not under any written deed of trust, had actually had financial dealings with the principal from and after September 30, 1914. It was competent for the parties to agree that their financial transactions beginning with September 30, 1914, should all be regarded as having been had under the provisions of the deed of trust and that they should all be included in any accounting between the parties.

Under the title of "assignment No. 1" it is further averred that the court erred as follows: "(b) In finding that 'from time to time statements of account were fur-

nished the cestui and no objection to any item of the account so rendered was made until sometime in 1920, when the objection was made that compound interest had been charged by the trustee. In fact, most, if not all, accounts so rendered were examined and in writing approved by the cestui;' (c) in finding that 'about this time it came to the knowledge of the cestui that the sale of the Nawahi Block, which had been made on installment payments in 1917, had been treated by the trustee as a cash sale. So treating the said sale as a cash transaction has always been objected to by the cestui, although she manifested her approval in writing upon being informed by the trustee that by so treating it she would be benefited. Whether she was or was not benefited by treating it as a cash transaction does not appear, each party making claims in support of the position taken by it. Had it not been for this situation it is quite probable the accounting would not have been ordered by the supreme court, or, to be definite, the supreme court predicated its reversal on this fact and the fact that compound interest had been charged in the trust accounts;' (d) in finding that 'it is shown by the record in this case that most of the original vouchers up to October, 1922, were turned over by the trustee to the cestui, and many of them were produced by the cestui at the hearing before the master. As to some vouchers the cestui admitted that she may have destroyed them (master's Tr. 5). I have seen nothing in the record indicating that the cestui withheld any vouchers in her possession. From this situation it becomes evident that the trustee in many instances is handicapped in presenting as full, complete and convincing evidence as it could have done had it retained its original vouchers. However, I take it as incumbent on the trustee to show the truthfulness of its accounts and to make in every instance a prima facie show-

964

ing of their verity;' (e) in finding that 'it is fair to counsel to say that at the time of the argument before the master they undoubtedly did not have as complete an understanding of the evidence as they have today.' " The so-called "findings" complained of in these four paragraphs were all statements of intermediate findings or conclusions or views or methods of reasoning made or indulged in by the trial judge in the general treatment of the subject before him. They do not set forth any ultimate conclusion of law which can be properly made the subject of an independent assignment of error. The judge may or may not have erred in some of these intermediate views; but those are matters that can be considered only in so far as they may prove to be germane to the consideration of some of the ultimate conclusions or rulings which are otherwise sufficiently assigned as error.

2. The circuit judge allowed in favor of the respondent trustee an item of $16,497.22 as and for a payment made by it to H. Hackfeld & Company, Limited, a corporation. The complainant objects to this allowance on the ground that the amount should have been only $15,547.40. Immediately prior to the execution of the deed of trust the complainant was indebted to various persons in sums which she was unable at that time to pay. She owned real estate of a supposed market value greater than the total of the debts. As shown by an opening recital in the deed it was the purpose and desire of the parties that the trustee should "take the said property and make an effort to preserve the same for the trust period and so long thereafter as may be necessary in order to pay the said debts out of the profits and sale of said property, thus preventing a loss of the whole of said property." One of the agreements contained in the deed reads as follows: "and it is hereby especially understood

and agreed and full power is granted to the party of the second part as follows: To advance out of its own funds any amount or amounts for the payment of the whole or portion of the following debts, charges and accounts: 1. The amount of principal and interest due to the various persons whose names appear in the schedule hereto attached, marked 'Exhibit A' and made a part hereof, the amount of the claim being set opposite the name of each." Exhibit "A," attached to the deed, bears the title, "Bills to be paid," and the first item in the schedule is "H. Hackfeld & Company, Ltd., $16,497.22." H. V. Patten, who at the time of the trial was a vice-president of the Bank of Hawaii of this city and in September, 1914, was cashier of the First Bank of Hilo, Limited, testified before the master (master's Tr. 908 *et seq.*) that about September 30, 1914 (the deed of trust was executed October 27, 1914), the manager of Hackfeld & Company came to him and offered bills to the First Bank of Hilo for discount. The aggregate of the bills so offered was about $250,000 and one of them was a claim against the present complainant for $16,497.22. Of all of the bills thus offered Patten, on behalf of the First Bank of Hilo, accepted only the claim against Mrs. Nawahi and paid to Hackfeld & Company the face value of that claim, less five per cent, or $15,672.36. In addition to this testimony, there was in evidence before the master and consequently before the trial judge a certificate of deposit (exhibit M-1719) issued by the First Bank of Hilo, Limited, in the sum of $15,672.36, made payable to H. Hackfeld & Company, Limited, and bearing the endorsement of the latter corporation by way of showing its receipt and subsequent deposit. There was also in evidence a check issued by the First Trust Company of Hilo, the respondent herein, dated October 28, 1914, the day after the execution of the deed of trust, in the sum of

$16,497.22, and payable to the First Bank of Hilo, Limited; also exhibit M-1, being a statement of the respondent trustee showing *inter alia* certain payments in the Nawahi trust and among them being "Oct. 28, payment to H. Hackfeld & Co., Ltd., $16,497.22;" also exhibit 22, being a statement furnished by the respondent to the complainant of its doings in the trust, containing under date of October 28, 1914, an item of cash paid to the First Bank of Hilo in the sum of $16,497.22; also exhibit A-7, being another statement by the respondent of the "Nawahi account," containing under date of October 28, 1914, the same item in the same amount paid to the First Bank of Hilo. This statement bears the endorsement at its end, "I hereby certify that I have examined the above and the same is correct," signed by the complainant. Exhibit M-19 is a book of original entry, kept by the respondent, showing payment of the same item of $16,497.22 to the First Bank of Hilo on the same date of October 28, 1914 (exhibit M-19, pp. 8, 9). The cash book of the respondent (exhibit M-49), at page 169, shows the same item as paid on behalf of the "Nawahi trust."

For the complainant it is claimed that there was evidence to the contrary, that the statements of account contain items otherwise heretofore shown to have been fraudulent and that some or all of this evidence contained in books and checks, etc., is fraudulent and unreliable. This argument, based upon the supposed existence of evidence to the contrary and upon the unreliability of the evidence adduced by the respondent, presents questions of credibility of the witnesses and of the weight of the evidence; and these, as above stated, we are not at liberty to consider, in view of the express provisions of the statute relating to writs of error. There was ample evidence tending to support the finding of the trial judge that the

complainant was indebted to Hackfeld & Company in the sum of $16,497.22 and that, while the bank purchased the claim from Hackfeld & Company at a discount of five per cent, the trustee paid the whole amount of the claim to the bank. Further contention is made that the purchase of the claim by the bank from Hackfeld & Company was merely a part of a faudulent scheme entered into by the respondent with the bank in order to defraud Mrs. Nawahi and to make for the trust company a secret profit at her expense. The evidence to which our attention has been called, which is claimed to support this contention, was not such as to require the trial judge, as a matter of law and against all the other evidence in the case, to sustain the contention. It is only questions of law that this court in this proceeding is dealing with.

3. This assignment is that the court erred "in finding that the accounts of the trustee for items prior to October 27, 1914, came within the terms of the trust deed and in finding that 'it was agreed by both parties to this proceeding that this part of the account should have been included by the master and it is so ordered.' " For the complainant it is denied that any such stipulation was entered into. Under our construction of the deed of trust to the effect that it was intended by the parties that the trust period should be deemed to commence as of September 30, 1914, the ruling complained of was correct, irrespective of any stipulation by the parties.

4. "That the judge erred in dealing with respondent's exceptions Nos. 6, 7 and 35, and in overruling the master in his findings that the trustee was required to pay and paid to the First Bank of Hilo, Ltd., interest at the rate of 6% per annum, payable monthly, on overdraft for trust purposes from October 27, 1914, to December 31, 1920, and in the master's allowance of interest at 7½% per annum

968

up to December 31, 1914, then six per cent (6%) per annum, payable monthly, up to December 31, 1920, then seven and a half per cent (7½%) per annum simple interest, payable annually, to date, with seven and a half per cent (7½%) per annum simple interest on all interest earned, from the date it became due until finally paid; and the judge erred in allowing to the respondent seven per cent (7%) per annum interest payable or compoundable monthly from January 1, 1915, to June 30, 1916, and from June 30, 1916, to June 6, 1917, seven per cent (7%) per annum payable or compoundable quarterly, and thereafter seven and a half per cent (7½%) per annum interest payable or compoundable monthly to date, contrary to the contract and to statute; and the judge erred in overruling the master and finding that 'the note, Ex. M-79, is regular in every respect,' and that 'this note was bona fide and was so treated by both the bank and the trust company.' "

24. This reads: "To the statement of accounts filed herein by the judge showing the balance of $33,261.39 due by complainant to respondent as of July 31, 1928, which statement was prepared by the respondent and in its office and to the allowance therein to respondent, with its stated consent, of interest charges monthly into the principal account, resulting in a monthly compounding of interest, thus making interest far in excess of that provided for or contemplated by the contract between the parties, and far in excess of any claims made by it through the accounts rendered her by the trustee."

27. That "the judge erred in allowing respondent to file on July 8, 1929, over complainant's objection, accounts and vouchers bringing the trustee's accounts from July 31, 1928, to June 30, 1929, and approving said accounts which showed a balance due respondent from complainant

in the sum of $34,220.68, as of July 1, 1929, which balance included monthly charges of interest, compounded monthly, aggregating for the eleven months' period the sum of $2295.60, whereas, simple interest on the true daily balance for the term, after adopting its claimed balance of $33,261.39 as of July 31, 1928, would be only $2212.44 (on an aggregate daily balance of $10,767,240.20), making an overcharge for compound interest for the eleven months of $83.16."

These three assignments present questions relating to interest. The appellant contends that the trial judge has allowed compound interest in favor of the trustee while the appellee maintains that no interest has been charged on interest. The final account, embodying all of the rulings of the trial judge and including such charges of interest as were allowed, is contained in a document entitled "Reconstructed Accounts" and containing 168 pages. Each of the pages contains a series of columns. In the first is given the date of each item, in the second is a brief statement in ordinary bookkeeping fashion of what the item is, in the third are set forth the "debit" amounts, being expenditures made by the trustee and chargeable against the *cestui,* in the fourth are the "credit" items, being sums collected by the trustee on behalf of the *cestui,* and in the fifth and last, entitled "Balance," are the daily balances arrived at by adding to the last preexisting balance the excess of debits over credits for the day or by subtracting from the last preexisting balance the excess of credits over debits for the day. The correctness of individual items of receipts and expenditures by the trustee, in so far as those items are attacked on this appeal, is disposed of by the other rulings contained in this opinion. This immediate investigation relates merely to the charges of interest and to the method of wiping out those charges.

In the first three pages of the account are set forth the receipts, expenditures and daily balances for the period from September 30, 1914, the inception of the trust, to and including December 31, 1914. Prior to the date just last named the only debits entered in the account and called "interest" represent payments made by the trustee to creditors of the trust estate for interest due to those creditors upon their claims,—interest evidently due under contract, express or implied. These are actual expenditures of cash by the trustee and upon these expenditures interest is properly chargeable. They are not items of "interest" within the meaning of the rule laid down in our former opinion (30 Haw. 359) that interest cannot be charged upon interest. This is stated merely for the purpose of clarity and is not disputed by the appellant. The first and only charge of interest in this period of three months is an item of $363.51, which is the aggregate of interest at seven and one-half per cent per annum for one day on each of the daily balances remaining during that period. (The interest for one day at the rate named per annum is .0020548.) The total credits received by the trustee during that period was $1639.45. That amount was first used, in the account, to wipe out the $363.51 of interest and then the remainder, $1275.94, was applied to the principal and was made to reduce the total indebtedness on December 31, 1914, by that amount. "The correct rule, in general, is, that the creditor shall calculate interest whenever a payment is made" to him. *Nawahi* v. *Trust Co.,* 30 Haw. 359, 377, quoted from *Story* v. *Livingston,* 13 Pet. 359, 370. In strictness, under this rule, which neither party now asks to have modified, the trustee would have been entitled to the application of the credit items as received from day to day to the payment of interest before applying the balance to the previous day's debit balance. Instead of doing

this the judge, in this period of three months, applied day by day the whole of each credit item received to a reduction of the principal indebtedness of the *cestui*. This method reduced the principal sum more rapidly than the *cestui* was entitled to have it reduced and the error, if any, is one in her favor and of which she cannot properly complain. In the account, in so far as it covers the period from June 30, 1917, to July 31, 1928, the same procedure was followed, namely, applying each receipt day by day wholly to a reduction of the principal until the end of each month and then calculating the interest for one day on each daily balance, subtracting the total of that interest from the credits received during the month and applying the excess of credits to a reduction of the principal indebtedness. The only exception in this second period named occurs in the month of May, 1926, when it was found that the total credits, $200, were less than the interest charges for that month, $221, and in that instance the excess of $21 of interest was not added to the balance against the *cestui* but was held in suspense until the end of the succeeding month of June, 1926, when it was added to the interest charges for that month and the total subtracted from the larger credits received and then the balance of credits received was applied to reduce the total indebtedness due by the *cestui*.

During the period from January 1, 1915, to June 30, 1917, the trustee owed the First Bank of Hilo, Limited, $28,049.36, in an ascertained sum, upon which, by contract, it was paying interest to the bank at seven and one-half per cent per annum. These items of interest (at 7½% on $28,049.36) were entered in the account during that period as expenditures made on behalf of the *cestui* and because the *cestui* was in this way actually paying the bank interest on that loan secured by the trustee on her behalf this

daily item of indebtedness ($28,049.36) was subtracted from the daily balances occurring throughout that entire period and thus any additional or double charge of interest to the *cestui* was avoided. The charges of interest on this loan to the trustee, sometimes appearing during that period of two and one-half years as monthly items of $163.63, and sometimes as quarterly items of $490.89, were properly inserted in the debit column because they were expenditures of its cash actually made by the trustee on behalf of the *cestui* and the fact that these items bore interest is not a violation of the rules laid down in our former opinion. Those rules sought to prevent charges of interest upon interest receivable by the trustee and not upon interest actually paid out by it to creditors. Save for this modification, during the period from January 1, 1915, to June 30, 1917, exempting the $28,049.36 from any second charge of interest, the same procedure was followed during that period of applying immediately each receipt of money wholly to the reduction of the principal indebtedness and of calculating the interest at the end of each month, subtracting this total from the total credits for that month and applying the excess of credits to a reduction of the principal.

It is our conclusion that the procedure followed by the trial judge resulted in the avoidance of any charge of interest upon interest and that no compound interest is, charged therein against the *cestui*.

The appellant further contends (assignment 4) that the court erred in allowing interest at the rate of 7½% during certain periods when the trustee was paying the bank for overdrafts at the rate of 6%. In remanding the case we held, in our former opinion, that the master and the court were "to calculate interest in favor of the trustee on all debit balances at the rate of 7½% per annum,

except with reference to the item of money" ($28,049.36) "borrowed by the trustee for the purposes of the trust from the First Bank of Hilo, Limited, as to which the rate of interest shall be that only which the trustee was obligated to pay to the bank." This ruling was based upon the terms of the contract. It disposes of the contention now under consideration. It may be added that the contract does not render the 7½% rate inapplicable to instances of payments by the trustee for the benefit of the *cestui* which may have been rendered possible in part by overdrafts on the bank, when the overdrafts were used generally by the trustee in its business as a trust company and were not identified as being especially for the purposes of this trust.

5. This assignment is that "the judge erred in overruling the master and allowing to respondent a so-called Dr. Sexton claim of two hundred ten and 80/100 dollars ($210.80), in the amount of two hundred and 80/100 dollars ($200.80), contrary to the evidence before the master." The trial judge set forth in detail (record p. 79) the evidence upon which he relied in making the finding which he did. That evidence was ample to support the finding of the court. With its weight and credibility we are not concerned. If the trial judge was satisfied, upon an examination of the evidence, that the master's conclusion was erroneous he was at liberty to overrule it and to make a contrary finding of his own. Findings of fact made by a master, while presumptively correct and entitled to a certain degree of weight, are, nevertheless, not conclusive on the trial judge and may be set aside by him if upon the evidence he is satisfied that the truth requires a finding to the contrary. 21 C. J. 622-624.

6. This assignment reads: "The judge erred in overruling the master and allowing respondent's exceptions Nos. 16, 17, 42 and 43 relating to insurance premiums and

commissions, thus allowing the trustee three thousand five hundred thirty and 66/100 dollars ($3,530.66) insurance profits, whereas, the master allowed it only two thousand three hundred eighty and 76/100 dollars ($2380.76) profit to July 31, 1928." Our "statute * * * requires that 'an assignment of errors shall be filed with the application for the writ.' The purpose of the statute doubtless was to apprise the defendants in error and the court of the issues of law sought to be presented for determination. A statement that a verdict or a judgment 'is contrary to law' is too general and vague to serve the purpose mentioned or to satisfy the statutory requirement. It does not definitely indicate to the opposite party or to the court what the precise error is which is relied upon. Under the charge that a verdict is 'contrary to law' it is possible to conceive of any one or more of a large number of possible errors as constituting the ground of attack on the verdict. What point or points are relied upon to set aside the verdict should not be left to mere surmise or to an exhaustive study of the record as a whole. The statute contemplates clear and definite information on the subject from the plaintiff in error at the time of suing out the writ. 'Each specification of error, like a paragraph or count of a pleading, must be single, clear, certain and complete in itself.' 2 Ency. Pl. & Pr. 938. 'It will generally be entirely insufficient to merely allege that the judgment or decree is contrary to the law and evidence, or not supported by the law and evidence, without designating the particular defects.' *Ib.*, 955." *Zen* v. *Koon Chan,* 27 Haw. 369, 372, 373. This court added that "upon an analogous point, it is well settled in this jurisdiction that 'the object of an exception as contemplated by the statute is to bring to this court a specific question of law upon which the trial court has erroneously ruled to the prejudice of the

party excepting, and not to enable the party to cast the entire case upon the court for review. Such a loose method of practice is unfair to both the opposite party and the court." *Ib.*, 373. If an assignment that a verdict is "contrary to law" is insufficient, it follows that the assignment now under consideration is also insufficient. The pleader does not even assert that the ruling was "contrary to law;" nor does he say that it was contrary to all of the evidence  or that there was no evidence tending to support it. The only reason given for the alleged error is that the master decided differently from the judge. The record in this case is a very voluminous one, with a transcript covering more than a thousand pages of testimony and with more than nineteen hundred exhibits that were brought from Hilo in large boxes as freight. The burden should not be cast upon this court to search through such a mass of evidence for indications for and against the theory of error.

7. It is assigned that "the judge erred in overruling the findings of the master disallowing a charge of five hundred seventy-six and 73/100 dollars ($576.73) for sidewalk and sustaining respondent's exception No. 18, and the judge erred in finding that any part of this expense was ever repaid to the cestui as a refund, as represented by respondent's accounts." This assignment is subject to the same comments as No. 6. It presents no certain question of law and is insufficient. On the merits, however, it may be added that there was ample evidence sustaining the allowance by the judge of the item in question. The proper authorities of the County of Hawaii notified the trustee to build (within certain specified boundaries) a sidewalk on the School street side of certain land belonging to Mrs. Nawahi. Statutes at that time in force authorized the county to compel property owners to build sidewalks in

976

front of their lands (R. L. 1925, §§ 1912-1915 and 1900) and, in the event of refusal, to build the sidewalks and to charge the cost thereof to the property owners. The trustee complied with the demand and built the sidewalk at a cost of $576.73. The item was included in one or more statements furnished to the *cestui* and was not objected to for a period of years. In the case at bar there was much and conflicting evidence on the subject of whether the sidewalk was built within or without the property line of the *cestui,* but there was clearly ample evidence tending to support the view that the sidewalk was wholly outside of the property line and adjoining that line and that none of the *cestui's* land was under the sidewalk as constructed by the trustee. The trustee presented the claim to the board of supervisors of the county that the sidewalk had been built upon land belonging to Mrs. Nawahi. The county authorities took a position to the contrary and were supported by some at least of the surveys made. There was evidence that an old fence long maintained by Mrs. Nawahi ran along the line claimed by the county.

After the sidewalk was built the trustee and the county authorities agreed upon the sale by the trustee to the county of a strip of land (in area about 3000 square feet) on the Ponohawai street side of Mrs. Nawahi's property for the widening of that street, the agreed price being $576.73. The evidence was conflicting as to the true market value of this strip of land, the values testified to varying from five cents per square foot to thirty-six cents per square foot. In other words, there was some evidence tending to show that the county paid far more than the true market value for the land. This sale, it could have been found from the evidence, was by way of a compromise of the conflicting contentions relating to the sidewalk. Judicial proceedings by way of resisting the demand of the conflicting contentions relating to the side-

mand for the construction of a sidewalk or by way of compelling the refund of the amount expended in constructing it might easily have cost the trust estate more than the amount expended for the sidewalk. Under all of these circumstances it cannot be held as a matter of law that the trial judge should have disallowed the item.

8. That "the judge erred in overruling the master and sustaining respondent's exception No. 22, thus allowing a charge of seven hundred dollars ($700.00) for Sam Parker note, and the judge erred in finding that Sam Parker turned this note over to the First Bank of Hilo and that said bank paid it." For all that appears to the contrary in this assignment the error relied on may have been that the judge erroneously weighed the evidence. The nature of the error, whether one of law or of fact, and if of law in what it consisted, is not set forth. Moreover, the evidence was conflicting. The item was included in the schedule attached to the deed of trust under the title "bills to be paid" and there was evidence that the trustee paid the amount and that Mrs. Nawahi did not pay it as she claims now that she did.

9. Assignments Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18—these assignments are insufficient and present no question of law for consideration.

19. That "the judge erred in overruling the master and disregarding his findings and restated accounts, and charging the complainant $28.25 as of March 4, 1920, for interest on A. K. Nawahi's account and without any showing of liability upon complainant to pay the same." There was evidence to support the allowance of this item, in the form of a promissory note signed by Emma A. Nawahi and Alexander K. Nawahi whereby they jointly and severally promised to pay $2407.68 and a memorandum or receipt signed and filed March 4, 1920, by the trust com-

pany showing a "debit balance of Alex K. Nawahi $2,379.43" and "A. K. Nawahi's account, $28.25," as one of four specifications of "interest at 7½% per annum from 1-1-20 to date," the two latter items aggregating the $2407.68 for which the note is given. See exhibit M-1068. Possibly there was other evidence but this was sufficient to sustain the ruling complained of.

20. That "the judge erred in considering respondent's exception No. 44, presented twenty-three days after the agreed time granted by him for filing exceptions to the master's report, and all extensions asked and granted thereto, had expired." It was competent for the trial judge to permit of the presentation of additional exceptions to the master's report after the time originally set by one or more orders for the presentation of exceptions had expired. The complainant was not deprived of an opportunity to be heard and was not prejudiced.

21. This assignment presents the same question as that disposed of in No. 20. It further charges that the judge erred "in overruling the master by allowing seven rejected charges against complainant aggregating $322.43 merely upon respondent's showing that they were charged and listed in its exhibit A-37, and against the master's finding that some of these items were allowed by him under presentations in different forms and others were not presented or their allowance asked for in any form in the hearing before him." This is an insufficient statement of an assignment. The "seven rejected charges" are not in any way described or identified except by saying that they aggregate $322.43. It throws the burden upon the court of searching the record to find seven charges that aggregate $322.43. This the court ought not to be asked to do, —certainly not in as voluminous a record as this one is.

22. That "the judge erred in overruling the exception

of complainant to the allowance by the master of 199 items aggregating $4982.37 which were unsupported by vouchers or other proper evidence, the only claim or showing of the respondent in support of them before the master being that they are shown as debit items on its exhibit A-37 and on a list drawn from said exhibit by E. L. Patterson and put in over objection as exhibit M-1093." Each assignment should be complete in itself. The hundred and ninety-nine items referred to are not in any way described or identified, except by the reference made to exhibit A-37 and exhibit M-1093. The latter consists of six typewritten sheets containing three hundred and thirty-seven items, with no means of identifying the hundred and ninety-nine items except by searching for items in that particular number which would aggregate $4982.37. Exhibit A-37 consists of ninety pages of closely typewritten schedules of items and figures, aggregating many times one hundred and ninety-nine in number. The court must decline the task of searching through these two exhibits for the particular one hundred and ninety-nine items to which reference is made. The appeal as to three of the hundred and ninety-nine items having been waived by the appellant in one of her earlier briefs, the statement is made in the appellant's last brief or memorandum filed in this court that "all of the 196 items, except the last ten, were prior to June 20, 1920, and, of course, they or their sum were in Ex. 22 and A-7 in some form." As heretofore pointed out, both of these last mentioned exhibits are statements of account rendered by the trustee to Mrs. Nawahi. There was testimony that exhibit 22 was not objected to for some years by the appellant and exhibit A-7 bears at the end the certificate above quoted, "I hereby certify that I have examined the above and the same is correct," signed by the complainant. These two exhibits constitute some evidence

in favor of the allowance to the trustee of the items there contained. Whether less weight should have been attached to this evidence by the master or by the trial judge, both of whom allowed the hundred and ninety-six items, are questions which by the statute we are precluded from considering in this case.

23. That "the judge erred in overruling the exception of complainant to the master's failure to credit her with a note of $4000.00 (Ex. M. C. 1721) given as a part of the purchase price on June 15, 1917, to her trustee, by the purchasers of her building known as Nawahi Block and her adjoining vacant lot known as Lot 5-A; the testimony showing that the purchasers had negotiated directly with Mrs. Nawahi for her combined property at a price of $39,000.00 and had later closed the deal with her trustee and that, 'properly speaking it should be $39,000,' instead of $35,000.00 as accounted for to her by respondent; and. to the reason assigned by the judge in his ruling, that the lot sold (5-A) was not a part of the trust property and never was so considered by either of the parties at any time."

This controversy relates to the purchase price of land sold by the trustee in June, 1917. Certain land, being a part of the corpus of the trust, was sold. The trustee claims, and both the master and the trial judge found, that the selling price obtained by the trustee was $35,000 and no more. The complainant claims that the selling price was $39,000 and introduced the testimony of one Kitagawa to support this claim. Kitagawa at first did so testify, but stated on later examination that he had made a mistake, that the price paid for the trust property was $35,000 only and that the additional $4000 was paid for land which did not belong to Mrs. Nawahi. (Master's Tr. 950 et seq.) Exhibit M-1720, a blueprint of a map of the

different pieces of property involved in the transaction or transactions and exhibit M-1101, a promissory note for $35,000 given on the date in question (June 15, 1917) to the First Trust Company of Hilo, Limited, are additional evidence tending to support the findings of the master and of the judge. Whether Kitagawa's later testimony should be given more credence or less credence than his earlier testimony was for the triers of the facts alone to decide.

25. This reads: "To overthrowing the findings and accounts of the master by raising in the said statement filed by the judge the master's allowance on eight insurance policies, charged March 21, 1916, from $385.01 to $650.00, and two policies charged November 2, 1918, from $39.01 to $62.20, and a policy charged February 10, 1919, from $12.75 to $34.00, some of which policies were admitted by respondent to have been cancelled within a few months after issuance, although no credit was given for refund in some cases until many months after expiration." This assignment does not present any issue of law. Its meaning is not entirely clear.

26. That "the judge erred in permitting respondent to pocket, through the said accounts prepared by it and filed by him, the sum of $121.73 interest paid by complainant's tenants on deferred payments of taxes and insurance which had theretofore been charged by it to her, and in taking at the same time from the insurance premiums so charged to her a profit for itself of 25% to 30%." This states no question of law. The items attacked are not identified in any way.

28. That "the judge erred in refusing to permit complainant to file in the case the statements of account of the trustee as rendered to the complainant for the last eleven months' period mentioned, showing the method in which it accounted to her, and its claims and charges for

interest differing from and less than the allowance made for interest by the judge." This does not state any question of law.

The decree appealed from is affirmed.

*D. E. Metzger* (also on the briefs) for plaintiff in error.

*C. S. Carlsmith* and *C. W. Carlsmith* (also on the briefs) for defendant in error.