832

▐�

▐

IN THE MATTER OF THE APPLICATION OF EDITH AUSTIN, MABEL FRAZAR AUSTIN, LINDSLEY AUSTIN AND HARRY HASKELL BEMIS, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF WALTER AUSTIN, DECEASED; LINDSLEY AUSTIN, JOHN FRAZAR AUSTIN AND DOROTHY BRADSTREET AUSTIN, FOR REGISTRATION OF TITLE TO CERTAIN LANDS.

No. 2215.

▐

▐

ARGUED MAY 5, 1936. DECIDED JUNE 13, 1936.

COKE, C. J., BANKS AND PETERS, JJ.

OPINION OF THE COURT BY COKE, C. J.

Edith Austin, and others, applied to the land court to have registered in their names the title to certain parcels of land situated at Waimalu, Honolulu, Territory of Hawaii, containing approximately three thousand acres. The appellant L. L. McCandless appeared and asserted ownership in himself of five small parcels within the area sought by applicants to have registered. At the trial in the land court the petitioners conceded Mr. McCandless's claim numbered one. The four remaining claims, however, were the subject of a contest and evidence bearing upon these issues was introduced on behalf of both the applicants and the contestant. At the close of the hearing the judge of the land court rendered his decision finding in favor of the applicants and held that they were the owners in fee of the several parcels in dispute. A decree to that effect having been entered, the contestant McCandless has brought the cause to this court on a writ of error to review the decision and decree of the judge of the land court.

Appellant's assignments of error (eight in number) are all of the most general in character. As an illustration: Assignment of error number one recites: "The court erred in entering a decree registering and confirming applicants' title to the lands involved in and claimed by the contestant, L. L. McCandless by paragraph 2 of his answer and claim, to-wit: A portion of grant 715, apana 2 to J. W. Opunui, containing an area of 2.78 acres, and more particularly described in exhibit 'B' attached to said claimant's answer and claim."

The other seven assignments are of the same broad and general tenor. There is perhaps in this jurisdiction no rule of law more certainly and definitely settled than where a proceeding in error is presented to this court upon general assignments of error we will not reverse any

findings of fact dependent upon the credibility of the witnesses or the weight of evidence. The court will confine itself to ascertaining whether there is evidence of that substantial character amounting to more than a scintilla to support the findings of the judge or the jury. This rule was announced in *Pahukula* v. *Maguire,* 9 Haw. 630. (See also *Grosjean* v. *Hiyama,* 28 Haw. 211; *Nawahi* v. *Trust Co.,* 31 Haw. 958; *Lemes* v. *Lusitana Society,* 32 Haw. 522; *Territory* v. *Taok, ante,* p. 560.) While the authors of some of these decisions invoked the inhibition contained in section 2524, R. L. 1925, a statute which has since been repealed (see Act 42, L. 1931), the decisions are merely declaratory of the common law doctrine applicable to a common law proceeding.

Mr. Justice Fuller said, in the case of *Dower* v. *Richards,* 151 U. S. 658: "A writ of error, which brings up matter of law only, has always been distinguished from an appeal, which, unless expressly restricted, brings up both law and fact." In *Hyde* v. *Booraem,* 41 U. S. 167, the court said: "One of the embarrassments attendant upon the examination of this cause in this court, is from the manner in which the proceedings were had in the court below. We have no authority, as an appellate court, upon a writ of error, to revise the evidence in the court below, in order to ascertain whether the judge rightly interpreted the evidence, or drew right conclusions from it. That is the proper province of the jury, or the judge himself, if the trial by jury is waived, and it is submitted to his personal decision. We can only re-examine the law, so far as he has pronounced it upon the statement of facts, and not merely a statement of the evidence of facts, found in the record, in the nature of a special verdict, or an agreed case. If either party in the court below is dissatisfied with the ruling of the judge in a matter of law, that ruling should be brought before this court by an

appropriate exception, in the nature of a bill of exceptions, and should not be mixed up with his supposed conclusions on matters of fact." (See also *Parsons* v. *Armor*, 28 U. S. 412.) "We examine the record on writ of error solely to ascertain whether there is some evidence to support the findings of fact." *Arcade & A. R. Corporation* v. *Kann*, 286 Fed. 809. Of course, if the findings of facts by the circuit judge are supported by no evidence, or by a mere scintilla of evidence, a general assignment of error to the effect that the findings are contrary to the evidence or the weight of the evidence would reserve a question of law for determination by this court. *(Territory* v. *Taok, supra.)* With these limitations in mind we will proceed to review the several claims of appellant but because claim number three involves no issues of fact but is confined solely to a point of law, it will be separately dealt with. In disposing of appellant's claims two, four and five, we are, under the rule above stated, necessarily confined to an examination of the record to ascertain whether there is present in the record more than a scintilla of evidence to support the findings of the judge of the land court.

*Claim number two.* This involves title to apana 2 of grant 715 to Opunui, having an area of 2.78 acres. While the evidence clearly indicated that the paper title to the property is in the appellees, Mr. McCandless claims title by adverse possession. McCandless testified that he purchased the property from one Antone Lopez in 1898. The deed upon which he relied as establishing color of title does not include, or even refer, to apana 2 of grant 715. The evidence offered on behalf of appellees was that their predecessor in interest, J. W. Austin, purchased the property from the owners thereof in 1887 and in 1890 Austin leased this parcel, together with other lands, to McCandless for a period of sixteen years from January 1, 1891;

that at the expiration of the McCandless lease, Austin leased to the Honolulu Plantation Company for thirty years from May 1, 1915. Watanabe, a sublessee under the plantation company, testified that he rented and lived on the land for three years,—that is to say 1924, 1925 and 1926—and paid rent to the company. Witness McKeague testified that he was well acquainted with the lot; that he remembered that Watanabe lived there, together with other Japanese, and that they paid rent to the plantation. James Gregg, office manager of the plantation company, produced the company's office records showing that the company had received rent from the Japanese tenants at the rate of $40 per year for apana 2 from November, 1915, to January, 1931. It is important to note that when McCandless obtained the deed in 1898, under which he claims the property, he was at the time in possession of the premises under his lease from Austin and continued in such possession until the expiration of his lease, on January 1, 1907. Some additional evidence was introduced by both the parties.

*Claim number four.* This claim has reference to a small area of land lying on the west bank of Waimalu stream. The boundary of the Austin land is the west bank of the stream. The McCandless land at this point adjoins the property owned by Austin. In the course of time the bank of the stream has, it appears, due to natural causes, shifted slightly to the west. That such is the case is supported by the evidence of appellees' witness C. G. Harrington, who was on the ground in 1928 and testified that he built an embankment along the westerly boundary of the stream as it existed at that time. This is supported by the corroborating evidence of Mr. Mann, a professional surveyor and civil engineer, who prepared the map of appellees which accompanies their petition and who personally inspected the premises. The territorial survey de-

partment approved the boundary line as it is designated on appellees' map.

*Claim number five.* This has reference to a small rectangular parcel of land, 250 x 300 feet in area, located on the west side of Waimalu stream and wholly within the boundaries of the land owned by appellees and is claimed by them as a part of the ahupuaa of Waimalu. McCandless, the appellant, claims that this parcel is a lele of an apana of the ili of Kainakoi, L. C. A. 8525-B, R. P. 6994. The ili of Kainakoi is owned by Mr. McCandless and is located wholly on the east side of Waimalu stream. In December, 1898, McCandless obtained a deed from one Pipi Kalala of "three pieces of land known as Kainakoi, described in R. P. 6994, L. C. A. 8525-B, except a portion of apana 1." This deed did not convey nor purport to convey any land on the west side of the stream nor was any reference made in the deed to a lele as appurtenant to the lands of the ili. The applicants have shown ownership by virtue of the fact that this parcel is a part of the area within the boundary of the ahupuaa of Waimalu which is owned by them and no evidence whatsoever has been introduced which would support a claim that this land is a lele or that it is not a part of the area owned by the appellees.

From the foregoing brief review of the evidence presented to the judge of the land court, it is obvious that the appellees established title to the several parcels of land in question by evidence of that substantial character amounting to more than a scintilla and under the well-known rule to the effect that this court, in reviewing a case in error, may not reverse findings of facts of the trial judge where such findings depend upon the credibility of the witnesses or the weight of the evidence, we must decline to disturb the conclusions of the court below. If the appellant felt himself aggrieved by the decision of the

judge of the land court upon the facts involved, he could have availed himself, under section 5033, R. L. 1935, of his right of appeal to the circuit court sitting with a jury and had a trial *de novo* of those issues. But having failed to do so he cannot expect this court on his general assignments of error to disturb the findings of fact of the lower court where the findings depend upon the credibility of witnesses or the weight of evidence.

*Claim number three.* This has reference to apana 2 of the ili of Paepae, mahele award 1, Royal Patent 4472 to Kamanoualani. It is a portion of the land described in appellees' map as apana 1 of Royal Patent 715 to J. W. Opunui. The appellant McCandless claims title to the land through Kamanoualani, while the appellees claim through Opunui. The question is solely one of law as to which of the parties has title. No facts are in dispute and the issue of law is properly before us on appellant's general assignments of error. Royal Patent 715 to Opunui is dated January 15, 1852. The mahele award to Kamanoualani is dated February 27, 1861, and Royal Patent 4472, issued to him on the award, is dated March 21, 1861. The mahele of 1848 vested no title in Kamanoualani but conferred upon him the right to present his claim to the land commission for an award of title. (*Kenoa* v. *Meek,* 6 Haw. 63; *In re Title of Pelekane,* 21 Haw. 175, 185.) Kamanoualani failed to present his claim to the land commission within the time prescribed by the laws of the Kingdom, to-wit, February 14, 1849. (See R. L. 1925, Vol. 2, p. 2140.) Therefore, on January 15, 1852, the date of the Opunui grant, the title to the ili was in the government and it had the right to convey the property to Opunui. The identical question now before us was decided by this court in *Kenoa* v. *Meek, supra.* The plaintiff Kenoa, similarly to McCandless, claimed under a mahele to one Pahoa one-half of the ili of Kalena

and the subsequent mahele award issued thereon in 1862. The defendant Meek claimed title through a deed from A. Bishop to whom, by Royal Patent issued in 1851, the property was granted. The court held that the grant to Bishop vested title in him and prevailed over any title subsequently acquired by Pahoa. It further held that Pahoa, having failed to obtain an award from the land commission within the time prescribed by the law, the award to him in 1862 vested no title which he could set up against the prior title acquired by Bishop under his grant issued in 1851.

We are in entire accord with the decision in *Kenoa* v. *Meek, supra,* but even were we inclined to question its soundness, the doctrine of *stare decisis,* which is a rule of precedent, would require us to follow it. When the courts of last resort have announced principles affecting the acquisition of title to real estate and the principles thus announced have been long established and conformed to, it is generally held that such decisions should not be overturned, although the principle announced therein might otherwise be questioned. (*American Mortg. Co.* v. *Hopper,* 64 Fed. 553, 554; *Menge* v. *The Madrid,* 40 Fed. 677, 679; *Moore* v. *City of Albany,* 98 N. Y. 396, 410.) The abolition of the doctrine of *stare decisis* would divest the law of one of its most important attributes. It would render the law fluctuating and capricious, resulting in an *ignis fatuus* to mislead the citizen.

The decision and decree of the court below should be, and are, sustained and the writ discharged.

*A. G. M. Robertson (Robertson & Castle* on the brief) for applicants.

*S. Shapiro* and *C. H. Tracy (Kemp & Stainback* with them on the briefs) for respondent.